## CLIFTON v. DEAN.

## CANGELOSI v. SAME.

### No. 1623.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

R. A. Dowling and H. J. Wyman, both of New Orleans, for appellants.

Schwing & Obier, of Plaquemine, for appellee.

LE BLANC, Judge.

The plaintiff in one of these consolidated suits, Dominick Cangelosi, is the owner of an automobile truck which was damaged in a collision with another truck owned by the defendant, J. Clyde Dean, at about 5:15 o'clock of the morning of March 2, 1933, on the paved highway leading into Alexandria from Melville at a point approximately 2 miles north of the village of Lecompte. Plaintiff in the other suit, Norman Clifton, was a guest passenger in Cangelosi's truck. The truck, at the moment of the accident, was being driven by Cangelosi's brother, Sam. Each of the plaintiffs has instituted a proceeding against Dean, seeking to recover damages from him, as they contend that the collision occurred through the negligence and lack of care of the driver of his truck, a man named Williams, in stopping and leaving the same parked on a narrow, concrete highway, on a rainy night, without lights burning, at such a place that vehicles approaching from behind it in the same direction in which it was headed were likely to run into it.

Cangelosi's demand is for the sum of $5,812, which includes items for damage to the truck, loss of freight consisting of fruit, doctor's bill, loss of time from work, and

pain and suffering from physical injuries. The latter item is for $5,000. Clifton's demand is for the sum of $6,048.50, and consists of an item for pain and suffering of $5,000, one for loss of time, $900, and the balance for doctor's and hospital bills.

The answer of the defendant in each case is a denial of the negligence charged against the driver of his truck, and in the alternative a plea of contributory negligence against each of the plaintiffs which bars the recovery of either.

From a judgment in each case dismissing each suit on the ground that the plaintiffs had failed to carry the burden of proof imposed on them, both plaintiffs have appealed.

Cangelosi was engaged in transporting freight by truck out of New Orleans on the highway leading through Baton Rouge to Alexandria. On the night preceding the accident, his truck left New Orleans, with a load of freight at about 8:30. Sam Cangelosi, as has already been stated, was driving, Clifton was seated in the middle, and Dominick Cangelosi on the right-hand side of the seat. At that time the Airline to Baton Rouge was not entirely paved, and traffic had to detour on a gravel road near Laplace. Besides making this detour, Sam Cangelosi says that they stopped twice to drink coffee before reaching Baton Rouge, consuming 10 to 20 minutes each time. In Baton Rouge they lost 20 minutes more waiting for a ferry across the Mississippi river. At Melville they again had to wait about half an hour for a ferry across the Atchafalaya river, and after getting across they stopped in Melville for coffee. All witnesses agree that it was a rainy and misty night with poor vision for automobile driving, and yet, despite all these handicaps and allowing time for the stops they made, they covered the distance between New Orleans and the place where the collision occurred, estimated to be 210 miles, in about 7 hours. Thus they averaged 30 miles per hour while running. As they necessarily had to slow down at times, especially at the railroad crossings which they say they had to pass, there were moments then when they went over 30 miles.

Dominick Cangelosi says that he was asleep at the time of the accident, and knows nothing of what actually took place. Clifton and Sam Cangelosi speak of meeting another truck which they recognized as a bread truck, just before running into the defendant's truck. Meeting that bread truck is the last thing Clifton remembers, as he was knocked unconscious in the collision with the other truck. Sam Cangelosi says that, because of the fog and mist, he could not see more than 10 feet ahead of him; that there were no lights on the defendant truck which was stopped ahead of his; and that, when he met the bread truck, he couldn't pull over on its side of the road as he would have run into it, and consequently he ran into the defendant's truck.

■ It seems not to be disputed that the driver of the defendant's truck was having trouble with the generator and that he had to stop to try to remedy it. At the time of the accident he is said to have made a statement to the effect that while he was working on the generator he heard or noticed the Cangelosi truck approaching at a great speed, so he hurriedly jumped into his driver's seat and set his truck in motion. There is some testimony to the effect that it was found in gear after the accident. Be that as it may, Williams, the driver of defendant's truck, turned out to be a witness for the plaintiffs, and in fact seems to be the one they rely on the most, as he positively states, as a witness, that his truck was stopped on the highway and that it had no lights burning at all. What was this witness' motive in testifying to facts different from some of those he is alleged to have stated after the accident, we do not know. His testimony, in view of these circumstances, does not commend itself strongly to the court, but, even if we give it full credence, and by it establish negligence on his part, it avails the plaintiffs nothing, as their contributory negligence is clear and bars them from recovery.

■ In the first place, the speed at which they were traveling, as already shown, was too great under the circumstances then existing. At that hour in the first days of March, it is still dark. It was misty and foggy and the road was wet and slippery. The driver's vision was bound to be impaired, as indeed he admits it was, and the other passengers in the truck were bound to have knowledge of that fact. A speed of 30 miles or more, for a large truck, loaded with freight, under those conditions, was too great. There seems to have been no attempt to stop the truck, but, even had the driver tried, he could not have stopped it in time, at the speed he was going. The force of the impact and its result furnish added proof of the excessive speed at which it was going. Taking their version that the

defendant's truck was stopped, and it having been shown that it was pushed forward 100 feet and that an iron frame was bent, the blow must have been a violent one which could only result from the speed at which the truck in motion was going. Certainly it was traveling at such speed as to make it impossible for the driver to have observed that well-recognized rule that a motor vehicle, running at night, should be under such control as to be stopped within the distance which its lights project in front of it.

In addition to the foregoing, it is shown that, instead of being equipped with the regular glass windshield, the Cangelosi truck had an improvised windshield of cardboard with a hole about 4 by 6 inches cut in it which afforded the driver his only vision. This impediment, added to the hazards already existing, demanded the utmost care and caution in driving that truck on that morning, and, in spite of it all, he is shown to have been going at 30 miles an hour or very probably more. Under the circumstances, he is bound to be held negligent, and his negligence bars recovery on the part of his brother, the owner of the truck.

Clifton's demand is predicated entirely on the guest doctrine under which he claims that, even though the driver of the truck be found to have been negligent, such negligence cannot be imputed to him. But, seated on the front seat, as were the other two occupants of the truck, he had every opportunity of observing, equally with the driver, the conditions existing. He sat behind the same improvised windshield as did the driver, and was bound to know the latter's vision was further impaired because of the small hole through which it was limited. With full knowledge of all these unusual conditions and the extra hazard involved in driving during these dark hours of the morning, he nevertheless permitted the driver to go on at a dangerous rate of speed and never uttered a word of protest. This court has held that a guest passenger in an automobile is not required to keep a constant lookout for the dangers of the road incident to automobile driving and that he has the right to rely to a reasonable extent on the exercise of the proper duty of care by the driver in charge of the car. This does not mean, however, that he can lightly abandon all care and throw all precaution to the wind. When unusual circumstances present themselves and the danger of driving increases, he is held to the exercise of greater prudence for his own safety and of at least protesting against any carelessness or negligence on the part of the driver. The plaintiff Clifton, having failed in the observance of this precaution, if indeed he did not acquiesce in the driver's negligence, makes him equally guilty of contributory negligence, and he is not entitled to recover.

A decree will be entered herein in the suit of Dominick Cangelosi and a separate decree in that of Norman Clifton.

For the reasons stated, it is now ordered that the judgment appealed from in the suit of Dominick Cangelosi v. J. Clyde Dean be, and the same is hereby, affirmed at the costs of the appellant.