At about 6:30 o'clock on the morning of June 6, 1943, near Kenner, La., on what is known as the Air Line Highway, which runs between Baton Rouge and New Orleans, a Ford sedan automobile, belonging to and driven by Kelley Ferraro, crashed into the rear end of a stationary dairy tank truck of Herbert W. Maitrejean who conducts his business as St. Charles Dairy Products Company. Mrs. Ferraro, who was also in the automobile, sustained injuries as did Mr. Ferraro, and the automobile was damaged. This highway is very wide, having four traffic lanes, two for use of vehicles going towards Baton Rouge and two for vehicles going in the opposite direction.
The reason why the tank truck was standing stationary in the highway was because only a few minutes earlier it had crashed into another truck belonging to T. L. James Construction Company which, at the time, was standing still in the highway. The underlying cause of these wholesale rear end collisions was a dense blanket or screen of fog and smoke which was not general but was limited to that particular locality.
Mr. and Mrs. Ferraro brought suit against Maitrejean, the owner of the dairy tank truck into which their Ford ran, and also made defendant, Liberty Mutual Insurance Corporation, the liability insurance carrier of Maitrejean. Mrs. Ferraro prayed for judgment for $4500 for her pain, suffering, shock and disfigurement, and Mr. Ferraro asked for judgment for $159.50 for expenses incurred by him as a result of his wife's injuries.
Later, Mr. Ferraro filed a separate suit against the same defendants for his own injuries, pain and shock, and for the damage sustained by his Ford automobile. In this second suit he prayed for judgment for $4560.50.
These suits were consolidated for trial and after trial there was judgment in each suit in favor of defendants.
Plaintiffs have appealed.
All three vehicles were going towards Baton Rouge and had just passed Kenner. The fog was unquestionably very dense at that spot but it extended only a very short distance into the direction from which the three automobiles had come. The driver of the truck of the T. L. James Construction Company, whose name was Matthews, intended to turn off the road to a side road leading to the right, but because of the fog he could not see this road and stopped on the paved portion of the highway.
The James truck had been stopped for only a very few moments when it was run *Page 566 
into from the rear by the dairy tank truck of defendant, Maitrejean. The dairy truck was damaged in a way which prevented its being moved off the highway, and also as a result of the accident its lighting system was damaged so that the lights which had been burning when it ran into the James truck, went out and could not be turned on again.
As soon as the collision occurred the driver of the James truck moved that vehicle to the side of the road, got out of it, walked to the dairy truck of Maitrejean and asked Breeland, the driver, whether he had any flares or lights which could be put out as a warning to other drivers, Breeland replied that he had such lights and he says that he proceeded to light them, but that before he could do so, the Ferraro automobile crashed into the rear of his truck.
In the meantime, Matthews, the driver of the James truck, went to his truck and obtained a "fusee" which is a powder burning warning light such as those used by railroads, and he lighted this fusee and, with it in his hand, walked to the rear of the dairy truck and then into the direction from which the Ferraro car was coming. He says that when he reached a point about 25 feet beyond the rear of the dairy truck, the Ferraro car came by; that he shouted a warning and waved the fusee but that in spite of this Ferraro's Ford crashed into the rear of the dairy truck.
Mr. and Mrs. Ferraro testified that they could not see the tank truck because it was silvery grey in color and that this color made it practically invisible in the fog, and they maintain that for this reason they were not at fault in any way, whereas the driver of the dairy truck, Breeland, was negligent in stopping his truck on the highway and in not putting out warning lights, which they maintain are required by the traffic laws of the state.
Defendants contend that Breeland, the driver of the dairy truck, was not at fault for the reason that because of the fog and because of the fact that the James truck was turning off the road to its right, he could not see it as it was stopped on the road ahead of him, and they assert that he was not at fault in not setting out his warning flares because, in the first place, so they maintain, there is no law which requires the use of such flares in the daytime, and in the second place, even if the traffic law or common prudence requires that such flares be put out when a truck is stopped on a highway during a fog, Breeland, in the emergency, did not have time to light and set out the flares, though he was attempting to do so.
[1] It seems to us well settled in the jurisprudence of this state that unless there are unusual circumstances which justify the failure of an automobile driver to see another vehicle in the roadway ahead, a motorist who runs into a stationary vehicle or into any object on the road is presumed to be guilty of negligence. Boland Machine Mfg. Co. v. Highway Insurance Underwriters, La. App., 22 So.2d 307; Louisiana Power Light Co. v. Saia, 188 La. 358, 177 So. 238, and cases therein cited. This rule is applicable where a fog or dense smoke produces an obscurity which makes it difficult to see. In Shell Oil Co., Inc., v. Slade, 133 F.2d 518, 520, the U.S. Circuit Court of Appeals for the Fifth Circuit said:
"It is settled law in Louisiana that one entering a fog, such as the one pleaded and testified to here, must stop until sure of his way, or if he drives into it, he must proceed at such a speed as that he can stop the car in the distance within which he can see objects in his way. It will not do for such a one to say, as here, that he was driving 20, 15 or even 10 miles an hour. The evidence establishes that in the fog he did not see and could not see the object he ran into within the distance within which he could stop his truck, * * *."
We recognized this rule in O'Rourke v. McConaughey, La. App., 157 So. 598.
[2] Because of this rule and because we find nothing on which we can base a conclusion that there was anything about the James truck which justified the failure of Breeland to see it, we think that Breeland was at fault in running into that truck.
There can be no doubt that a stationary, unlighted truck on a very much travelled highway is a potential source of danger and, therefore, when the dairy truck, after the collision with the James truck, was standing on the highway in the fog, it was unquestionably a potential source of danger to anyone else driving on that highway. Therefore Breeland's negligence in running into the James truck can be pointed to as one of the causes for the existence of this potential source of danger.
It is true that there seems to be no requirement in the traffic laws of Louisiana that when a truck is stopped on a highway *Page 567 
in the daytime flares must be set out to warn other motorists. The only requirement as to the use of flares is found in Act No. 164 of 1936, as amended by Act No. 215 of 1942. See Dart's Statutes, Sec. 5309.5. This requirement is that such flares be set out "during the period of from one-half hour after sunset to one-half hour before sunrise." Technically then, Breeland did not violate any statute in failing to have his flares out when the accident occurred, though in the absence of statute it may well be that it would be considered negligence to stop a vehicle in such a fog without putting out such lights. Furthermore, the record convinces us that there was no time between the occurrence of the first accident and the occurrence of the second in which Breeland could have lighted and placed those flares. But the fact that the dairy truck was standing stationary on the highway was due, as we have said, to negligence on the part of its driver and its presence there was a factor which contributed to the second collision.
[3] The reasons which prompt us to hold that Breeland was negligent apply with equal force to the contention of defendants that Ferraro, himself, was negligent in running into the dairy truck. It is true that he and Mrs. Ferraro contend that because of its color it was practically invisible, but the record convinces us that he drove his automobile into the fog at a speed of from 20 to 25 miles an hour without lights, and that he paid no attention to the warning of Matthews who, with the burning fusee in his hand, shouted to him to stop. We think, therefore, that his negligence was a contributing cause of the collision between his car and the dairy truck just as the negligence of Breeland was a contributing cause of the collision between the dairy truck and the James truck.
[4] Therefore, the negligence of Ferraro stands in the way of recovery by him for, as was said by the United States Circuit Court of Appeals for the Fifth Circuit in Shell Oil Co. v. Slade from which we have already quoted:
"* * * one entering a fog, such as the one pleaded and testified to here, must stop until sure of his way, or if he drives into it, he must proceed at such a speed as that he can stop the car in the distance within which he can see objects in his way. * * *"
Ferraro was guilty of contributory negligence which had causal connection with the accident, and, therefore, he cannot recover.
[5, 6] As to the claim of Mrs. Ferraro, the legal situation is different. The negligence of her husband who was driving the car is not to be imputed to her. Vitale v. Checker Cab Co.,166 La. 527, 117 So. 579, 59 A.L.R. 148. Therefore, unless there was some independent negligence of Mrs. Ferraro, she may recover for her own injuries since they were caused by an accident to which the negligence of the driver of the dairy truck of Maitrejean contributed. We find no negligence on her part. There is no contradiction of her statement that before entering the fog she warned her husband to reduce his speed and that he did so, and it is evident that after entering the fog there was no time in which she could have effectively warned him again concerning the fact that the lights had not been turned on or concerning a further reduction in his speed. Since there was no negligence on her part, she is entitled to recover for her injuries.
[7] She is a young woman 27 years old. According to her physician she sustained "* * * a complete transverse fracture of the acromion process about one inch from the acromio-clavicular joint, with the position good. * * *" She also sustained a cut above the right knee which, on the day of the trial, was found to be three-fifths of an inch wide and four and one-half inches in length. As a result of the fracture she was completely disabled for about three months. Her doctor testified that he saw her first on June 7, 1943, which was the day after the accident, and that he saw her last on July 27th. It was agreed that Dr. John T. O'Ferrall should submit, in writing, his report and this report was made on the 10th of September, 1943, which was a little more than three months after the accident. It showed that the scar on the leg "is well healed, is not adherent and is not tender." As to the arm, the report shows that at that time there was "no evidence of pathology of the right shoulder except very slight limitation of full extension of the right arm and slightly limited internal rotation of the right shoulder." The report concludes with the following statement:
"It is my opinion that the above named claimant presents no pathology which could be considered as permanent residuals of her automobile accident. It is my opinion that *Page 568 
the right shoulder will become entirely normal, and the slight limitation of motion will be overcome by use. The knees, forearm and hand show no residuals except the scars which have resulted from the lacerations. I believe in a very short period her condition will be entirely normal."
We have given much thought as to how much should be allowed for such injuries. We have read many cases involving broken arms and scars, and have reached the conclusion that Mrs. Ferraro should recover $1500 for the broken arm or shoulder and $500 for the scar, or a total of $2,000.
It is therefore ordered, adjudged and decreed that the judgment appealed from, in so far as it runs against Mrs. Kelley Ferraro, be and it is annulled, avoided and reversed and that there now be judgment in favor of Mrs. Kelley Ferraro solidarily against Herbert W. Maitrejean and Liberty Mutual Insurance Corporation in the full sum of $2,000, with legal interest from judicial demand, and for all costs, and it is further ordered that in all other respects the judgment appealed from be, and it is affirmed.
Reversed in part and amended in part.
WESTERFIELD, J., absent, takes no part.