61 So.2d 218 (1952)
DIXIE HIGHWAY EXPRESS, Inc.
v.
C. C. GALBRAITH & SON, Inc.
No. 19949.
Court of Appeal of Louisiana, Orleans.
November 3, 1952.
*219 Porteous & Johnson, New Orleans, for plaintiff and appellant in main demand and appellee in reconvention.
Rosen, Kammer, Hopkins, Burke & Lapeyre, New Orleans, for C. C. Galbraith & Son, Inc. and American Policyholders' Ins. Co., defendants and appellees in main demand, and C. C. Galbraith & Son, Inc., plaintiff and appellant in reconvention.
McBRIDE, Judge.
This is a suit by Dixie Highway Express, Inc. against C. C. Galbraith & Son, Inc. and its liability insurance carrier, American Policyholders' Insurance Company, for damages and resulting loss to one of its tractor-trailers sustained in a collision which happened in a dense fog bank on October 31, 1950 at about 6:15 A.M. on U. S. Highway 90, at a point east of New Orleans locally called Eleven Mile Post. At the point of the collision the highway, which is of concrete construction, has four lanes, consisting of two west bound lanes and two east bound lanes, which are separated by a neutral ground. C. C. Galbraith & Son, Inc. reconvened for the damages sustained by its truck in the accident.
It is alleged that the driver of the Galbraith truck was negligent in the following particulars: (a) failing to keep a proper lookout; (b) driving at an excessive rate *220 of speed; (c) failing to have his vehicle under control; (d) driving at a rate of speed which, under the unusual atmospheric conditions prevailing, constituted recklessness and carelessness; and (e) operating a motor vehicle at such a speed that he could not stop within the range of his vision.
Defendants in their answer denied negligence on the part of the driver of the Galbraith truck and disavowed liability, and alternatively charged that plaintiff's driver was contributorily negligent in certain particulars: (a) stopping on the highway when it was practicable to park off of the traveled portion thereof; (b) stopping and leaving less than an unobstructed fifteenfoot width upon the main traveled portion of the highway; (c) bringing his tractortrailer unit to a halt in a fog or smoke so that a clear view of the vehicle did not exist from a distance of 200 feet away; (d) failing to place flags or flares about the parked vehicle so as to serve as a warning to approaching traffic; and (e) failing to take any precautions whatever to avoid the collision.
After a trial on the merits, the district court rendered a judgment which dismissed both demands, from which the plaintiff has appealed; C. C. Galbraith & Son, Inc. has appealed from that part of the judgment dismissing its demand in reconvention.
The record adequately establishes the following facts: Two vehicles, each of which was a tractor-trailer unit, owned by the plaintiff, were traveling at about 35 or 40 miles per hour to New Orleans from the direction of Slidell at a distance of from 100 to 200 yards apart. Near Eleven Mile Post, the forward tractor-trailer unit, driven by Johnson, which we shall call for purposes of this opinion "Dixie No. 1," was flagged down as the highway at that point was blocked by automobiles which had collided in the dense fog, and Dixie No. 1 was brought to a stop on the righthand side of the highway adjacent to the shoulder leaving the left-hand lane open. Morehead, the driver of the second tractor-trailer unit of plaintiff, which we shall call "Dixie No. 2," upon seeing the taillight of Dixie No. 1 disappear into the thick fog slowed his speed and came to a stop 6 or 8 feet immediately to the rear of the first unit. Defendant's motor truck, driven by Sproul, which was also proceeding to New Orleans from the direction of Slidell, crashed into the rear of Dixie No. 2 causing considerable damage to both vehicles.
We agree with the trial judge that there was negligence on the part of Sproul, the truck driver. He maintains he drove the truck along at about 20 or 25 miles per hour, and says that before reaching the dense fog shrouding the locus of the accident, he had passed through intermittent fog banks. This, we believe, should have served as sufficient warning to him of the necessity of proceeding only in a careful and prudent manner. Sproul drove his truck headlong into the fog and only seeing Dixie No. 2 when he was close upon it, his application of the brakes was ineffectual, the effect being a skid and then the crash.
The driver of a vehicle whose vision is obscured by smoke or atmospheric conditions must exercise prudence commensurate with the situation. The density of the fog at the point of collision was such that the range of vision was reduced to about 5 or 10 feet, and this being so Sproul should have realized the dangerous potentialities of the prevailing conditions, and even if it be conceded that his speed was only 20 to 25 miles per hour he was inhibited from stopping within the range of his vision, and under the circumstances this warrants a finding of negligence against him. See Raziano v. Trauth, 15 La.App. 650, 131 So. 212.
In Peart v. Orleans-Kenner Traction Co., 11 La.App. 11, 123 So. 822, 823, we made this observation:
"* * * Fog constitutes the greatest menace of transportation, whether upon land or sea, and is the most feared of all perils that confront the traveler. The `pea soup' fogs of London are notorious for causing confusion and disaster in connection with pedestrian and vehicular traffic. Science, which in so many instances has relieved, or allayed, or mitigated the difficulties which beset, and ills which *221 afflict, mankind, seems helpless and hopeless in this particular, and has contributed nothing with which to combat this terror of transportation. * * *"
And in O'Rourke v. McConaughey, La.App., 157 So. 598, 606, we said:
"If fog constitutes `the greatest menace of transportation whether upon land or sea,' it likewise imposes the burden of most extraordinary and unusual care upon the operator of a vessel or vehicle navigating or traveling through the fog."
In Giorlando v. Maitrejean, La.App., 22 So.2d 564, 566, we quoted with approval language used by the Circuit Court of Appeals for the Fifth Circuit in Shell Oil Co., Inc. v. Slade, 133 F.2d 518, 520, as follows:
"* * * It will not do for such a one to say, as here, that he was driving 20, 15 or even 10 miles an hour. The evidence establishes that in the fog he did not see and could not see the object he ran into within the distance within which he could stop his truck, * * *."
Notwithstanding the finding of negligence on the part of the driver of the Galbraith truck, the demands of the plaintiff were dismissed below, as the trial judge was of the opinion that Morehead, its driver, was also guilty of negligence proximately causing the accident. We do not concur in this finding.
The record establishes that Dixie No. 2 had been brought to a stop at most not more than two minutes ahead of the crash. This sufficiently appears from the testimony; Morehead, the driver, said that the elapsed time was less than half a minute; Johnson estimated the interval between the stop and the crash at half a minute. Two disinterested witnesses who were occupants of an automobile which had been involved in the other accident and who were on the scene also testified as to the length of time which elapsed, and one estimated that it was not quite one minute, while the other said that the elapsed time was one or two minutes.
Defendants' counsel challenge the assertions of the four mentioned witnesses, and argue that Dixie No. 2 had been stopped in the roadway for better than ten minutes before it was run into. Both Dixie vehicles had passed the Galbraith truck about 16 miles beyond the place of the accident, and counsel's theory is based on a mathematical formula which takes into consideration the relative speeds of the vehicles, and for the purposes of the calculation, the maximum speed at which the Galbraith truck was traveling is placed at 25 miles per hour. It is quite true that Sproul did testify that he never traveled at more than 25 miles per hour, but against his testimony is that of Johnson, the driver of Dixie No. 1, who says that when he passed the Galbraith truck it was moving at about 30 or 40 miles per hour. The testimony of Johnson as to the speed of the truck is bolstered by the circumstance that the truck skidded about 75 feet after its brakes were applied, which eloquently attests that its speed was greater than that accorded it by its driver, Sproul.
In support of the plea of contributory negligence, it is first argued that plaintiff's driver should have parked his vehicle off the traveled portion of the highway, and that in no event should he have parked on the highway unless an unobstructed width of not less than 15 feet upon the main traveled portion of the highway opposite the vehicle was left free for the passage of other vehicles, nor unless a clear view of such vehicle existed from a distance of 200 feet as required by LSA-R.S. 32:241. This section of the statutes has no applicability here. We do not believe that the emergency stop made by Morehead can in any sense be considered as an attempt to "park" his vehicle within the contemplation of the statute.
Counsel also insist that Morehead failed to comply with the provisions of LSA-R.S. 32:441-442, which require the placing of flares about a vehicle parked on a highway during the nighttime and for the placing of red flags about a vehicle parked on a highway during the daylight hours. In reply to this contention we first *222 say that the provisions for the placing of the flares do not apply in this case, because the accident happened after sunrise, and we know of no law which requires the use of such flares during the daytime. But if it is to be said that caution and prudence dictated to Morehead that he should have set out flares because of the density of the fog, or if he was bound to put out the red flags as required by LSA-R.S. 32:442, we are convinced that he, in the emergency, did not have time to do either of these things. See Giorlando v. Maitrejean, supra. Immediately upon stopping Morehead pulled the hand valve down, locking the trailer brakes; then he tried to alight from the cab and had one foot on the running board and was reaching for a fusee, when the impact came.
The lights on both tractor and trailer of Dixie No. 2 were lit, and we fail to see that Morehead could have done anything in the emergency more than was done which could have prevented the accident, and we find absolutely no basis upon which to convict him of contributory negligence.
The physical damages done to plaintiff's vehicle amounted to $1035.35, which represented the cost of repairs. This item is not in dispute, as counsel for all parties stipulated that the amount is correct.
There is also an item claimed by the plaintiff for loss of use of the damaged tractor and trailer in the amount of $750.
The Director of Safety of plaintiff testified that the trailer was laid up for one week while being repaired, and that during the interval plaintiff, for the purposes of its business, rented another trailer at the rate of $10 a day, thus incurring an expense of $70. It took considerably longer to make repairs to the tractor, due to shortages and the unavailability of necessary parts for repairs. The tractor was out of use for about two and one-half months, and uncontradicted testimony reflects that the rental paid out by plaintiff for the use of another tractor, which it actually used in its business while its tractor was being repaired, was $798.70. However, plaintiff only makes claim for $750 for rental of both the trailer and the tractor, and it is entitled to recover the amount claimed.
The law is well settled that the owner of a vehicle used in business is entitled to recover for its loss of use for a reasonable time where such results in a business loss. Carkuff v. Geophysical Service, Inc., La.App., 179 So. 490; Drewes v. Miller, La.App., 25 So.2d 820; Tornabene v. Rau, La.App., 34 So.2d 655. Of course the owner should have the repairs done promptly, but due to the unusual circumstances existing it seems that it was impossible for the plaintiff to have the repairs made to its tractor completed sooner, and our opinion is that whereas plaintiff was free from fault in the matter of the unusual length of time necessary for the repairs, its right to recover is unaffected.
Due to the conclusion we have reached, the reconventional demand of the defendant, C. C. Galbraith & Son, Inc., falls.
For the reasons above assigned, the judgment insofar as it dismisses plaintiff's demands against defendants is reversed, and it is now ordered that there be judgment in favor of Dixie Highway Express, Inc., and against both defendants, C. C. Galbraith & Son, Inc. and American Policyholders' Insurance Company, in solido, for the full sum of $1785.35, with legal interest from judicial demand until paid, and for all costs of this suit.
It is further ordered that the judgment insofar as it dismisses the reconventional demand of C. C. Galbraith & Son, Inc. be and the same is hereby affirmed.
Reversed in part and affirmed in part.