JONES, Judge.
This suit arose as a result of an automobile accident which occurred in the Parish of Tangipahoa on U. S. Plighway 190 about one mile east of Hammond, Louisiana, between a Cadillac automobile owned and operated by the plaintiff, Jesse J. Bickford, and a Dodge pickup truck, belonging to one Sam Dimattia and under the control of one Sam A. DePaula. The petition' reflects that the suit was originally instituted against the State Farm Mutual Automobile Insurance Company, the liability insurer of the pickup truck, against De-Paula, the operator of the truck, as well as DePaula’s insurer, the Phoenix Insurance Company. The suit against Phoenix Insurance Company was on the theory of second liability, it being the insurer of DePaula’s personal automobile, but at the time of the trial, this defendant was dismissed from the suit upon motion of the plaintiff. A request for a jury trial on the part of the plaintiff was granted and a verdict was rendered in favor of the plaintiff by the jury. The verdict was in the following words:
“In favor of plaintiff Jesse J. Bick-ford the sum of $7241.61.”
As a result of this verdict, the District Judge signed the judgment in favor of the plaintiff in the amount of $7,241.61 and against the defendant, State Farm Mutual Automobile Insurance Company. From this judgment, State Farm Mutual Automobile Insurance Company and defendant, DePaula, have appealed. While no specific assignment of error has been set forth, it is apparently the contention as shown by defendant’s answer that DePaula was not guilty of any negligence in connection with the accident and, even if he was, the plaintiff Bickford was guilty of contributory negligence, especially pled in the answer, which bars his recovery.
The facts show that on September 23, 1958, shortly after nine o’clock P.M., defendant DePaula, who was operating Dante’s Food Store with his father-in-law, Sam Dimattia, a little more than a mile east of Hammond and immediately north of U. S. Highway 190, had closed the food store and gotten into the Dodge pickup truck with the intention of proceeding in a westerly direction on U. S. Highway 190 toward the town of Hammond. This highway is shown to be 18 feet wide with shoulders some five feet in width on each side thereof and runs in an east-west direction. After DePaula reached said highway, he turned to the right and proceeded in a westerly direction toward Hammond for a distance of some 200 to 300 feet at which time the Dodge truck “flooded”, causing- it to stop in the north lane of said highway. DePaula attempted to start the truck by pressing on the starter several times but when he was unable to do so- he then got out of the truck and tried to push it from the highway and being unable to do so, he got back into the truck and again tried to start it. At this time the Dodge truck was hit from the rear by the Cadillac car owned and operated by the plaintiff Bickford.
Bickford’s testimony is to the effect that he was traveling on said highway in a westerly direction from Covington towards Hammond; that he had been to Covington on that afternoon calling on customers in connection with his work as a refrigerator salesman; that after finishing his work he had had two beers and had left Covington at approximately 8:00 P;M.; that when he *493 reached a point on the road about one mile east of Hammond, driving with his dim lights on, lie noticed something in the road ahead of him; that he couldn’t tell whether this was a car or truck or what but that he immediately flicked on his bright lights and at that time when he recognized that the object was a truck, he was between 175 and 200 feet from it. He, however, further testified that when he first saw the object he was between 200 and 250 feet from it; he also, as he expressed it, “’struck” his brake. He admitted that he was traveling 60 miles per hour and that after he turned up his bright lights and when between 175 and 200 feet from the truck he “got up on top of my brake” to start stopping his car. He stated that the weather was dry and that his power brakes were in good condition; that the Dodge truck, when he saw it, was in his lane of the highway partially in a curve with which he was very familiar because he had traveled that road on many occasions; that he had decided to go around the Dodge truck but when he reached a point 60 feet east of it and while in the south lane of travel he noticed the clearance lights of a large truck proceeding toward him a distance of approximately 250 feet and, as a result of this, he cut back and struck the Dodge truck on its left rear. He further testified that there were no lights on the Dodge truck immediately prior to the accident. DePaula, the driver of the Dodge truck, was positive the lights were on his truck when it was struck from the rear by the Cadillac. They were the only two witnesses to the accident. The case having been tried by a jury and it being within its peculiar province to pass upon the credibility of the witnesses, it is apparent that the jury found that the lights were not on the Dodge truck immediately prior to the accident for it found that the negligence of DePaula was the proximate cause of the accident. We are bound to accept this finding of the jury as to the lights not being on on the Dodge truck. However, a plea of contributory negligence on the part of the plaintiff Bickford is relied on as constituting a proximate cause of this accident. In support of this plea, defendants allege and contend that the plaintiff was:
(1) Operating his motor vehicle at a rate of speed in excess of that permitted and authorized under the statutes of the State of Louisiana;
(2) Failed to have his vehicle under proper control;
(3) Failed to keep a proper lookout;
(4) Failed to see and observe the Dodge truck which had been forced to come to a stop;
(5) Driving his car at such a speed that he could not stop within the distance of 200 feet of the illumination on the vehicle he was operating;
(6) Failed to act as a reasonable and prudent person would under similar circumstances.
As heretofore pointed out, from the testimony of the plaintiff it is shown that when he was between 200 and 250° feet from the Dodge truck he knew that there was something ahead of him and in his lane of traffic but he didn’t know exactly what it was. Irrespective of what the object might have been, it was his duty to at that time bring his car under control in order to avoid the possibility of an accident. He did testify that at that time he “struck” his brake, apparently with his right foot and flicked his bright lights on with his left foot. Since he has testified that at this time he was some 200 to 250 feet from the object, we believe it is reasonable to split the difference in his estimate and hold that he was at least, if not more than, 225 feet from said object. Blashfield’s Cyclopedia of Automobile Law and Practice, Volume 9C, Section 6237, at page 413, depicts a chart indicating the number of feet per second a car travels at a given rate of speed together with the reaction time of the average driver, as well as the distance within which a vehicle can be stopped. This chart indicates that a car *494 traveling at a rate of speed of 60 miles per hour is moving at a speed of 88 feet per second and that the average driver reacts to a warning in three-fourths of a second, at which time the car travels 66 feet. It further indicates that the actual stopping distance for a car with brakes in excellent condition traveling at a rate of speed of 60 miles per hour is 160 feet and allowing for the reaction time of 66 feet, a car traveling at such speed can be stopped at a distance of 226 feet. Thus, it is apparent that if the plaintiff struck his brakes when he was 225 feet east of the Dodge truck, then the collision causing his personal injuries could not have happened. The most that can be said is that he might have come in contact with the rear end of the Dodge truck with no force whatsoever. Further than this, when he was at a distance of 175 feet from the Dodge truck and after he was conscious of the danger, he stated “I got up on top of my bráke”, at which time he says he was traveling only 55 miles per hour and, even at that time, he could have stopped his car because the actual stopping distance, as shown by the chart, for a car traveling 60 miles per hour is 160 feet. We might further point out that the plaintiff’s testimony is somewhat inconsistent for he testified that when he was about 60 feet from the parked truck he saw some lights from an oncoming truck, and he thought he couldn’t make it around the parked truck. At this time his testimony shows that he was in the south traffic lane. On page 34 of the testimony, he testified that he had applied his brakes before he saw the large truck coming toward him. The evidence is clear that the Cadillac struck the Dodge truck on its left rear and knocked it a distance of between 30 and 35 feet in a northwesterly direction and the Cadillac after striking the truck went a distance of 102 feet stopping partially on the shoulder and on the pavement of the south shoulder of the road. Thus, if the plaintiff had been in the south traffic lane immediately before the accident and had cut back to his right and struck the Dodge truck in the left rear while traveling in a northwesterly direction, his Cadillac would have continued on with the Dodge truck. We are accordingly of the opinion that he was not in the south traffic lane but in the north traffic lane immediately prior to striking the Dodge truck, that as a result of the glancing blow as testified to by Trooper Meyers he knocked it in a northwesterly direction and his Cadillac continued in a southwesterly direction.
As heretofore stated, the drivers of the respective vehicles were the only witnesses to the accident but about an hour after it happened, State Trooper Meyers made an investigation and found that from the skid-marks of the Cadillac, the brakes were applied 80 feet east of the point of collision and that after the collision the skidmarks continued for a distance of 102 feet where the Cadillac came to rest. Thus, there were skidmarks from the Cadillac of 182 feet. Blashfield’s Chart, supra, reflects that the actual stopping distance of a car with brakes in excellent condition, traveling at 60 miles per hour, is 160 feet. Thus, since the plaintiff testified that his brakes were in good condition and the weather was dry, then no other conclusion can be reached than that he was traveling in excess of 60-miles per hour when his Cadillac was 80' feet from the Dodge truck and made skid-marks from that point for a distance of 182' feet. This is particularly true when it is taken into consideration that the Cadillac struck the rear of the Dodge truck knocking it a distance of between 30 and 35 feet thereby impeding the forward progress of said Cadillac. Thus, we are of the opinion-that as the Cadillac was traveling at a speed in excess of 60 miles per hour immediately prior to the collision and within a distance of 80 feet from the parked truck, then the excessive speed at which the plaintiff was operating his car was the-proximate cause of this accident and precludes his recovery on the basis of his-contributory negligence.
We have reviewed the cases cited by the-plaintiff and do not find them applicable for in each of the cited cases the factual sitúa *495 tion is different from the factual situation presented in this case. In Suire v. Winters, 233 La. 585, 97 So.2d 404, the plaintiff was blinded by the lights of an oncoming car. In Pennsylvania Fire Insurance Company v. Wright, La.App., 110 So.2d 235, the plaintiff was found free from negligence because the Thunderbird convertible of the defendant, with only the left rear thereof on the paved portion, partially blocked the road and another car blocked the other lane and the character of the Thunderbird, it being low in height and the top down, made it difficult to see.
We further do not find that the cases relied on by defendant are applicable to the particular facts of this case. In Crow v. Alessi, La.App., 55 So.2d 16, the plaintiff had followed the truck which he struck for approximately nine or ten miles at a rate of speed of 50 miles per hour and he claimed he struck the truck because it suddenly applied its brakes. The court found that the plaintiff had not proven that the preceding truck had suddenly applied its brakes and, too, the accident happened during the daylight hours. In the case of Dominguez v. American Casualty Company, La.App., 47 So.2d 72, there were abnormal weather conditions and the plaintiff was blinded by oncoming lights. The case of Jones v. Burke, La.App., 51 So.2d 322, is somewhat similar to the present case even though there were abnormal weather conditions because the court held therein that if the plaintiff saw the slightest evidence to indicate that there was danger ahead he should have begun to prepare to slow down for what might come. The court accordingly found that in failing to slow down as soon as he should after he had seen a shadow in the road, as testified to by him, the plaintiff was guilty of contributory negligence barring his recovery. Even though the plaintiff in the present case testified that he did slow down as soon as he knew that there was some object in the road in front of him when he was a distance of at least 225 feet from said object, we are of the opinion that he did not do so for the reasons above stated for if he had done so the resulting collision causing his personal injuries could not have happened.
Accordingly, we are of the opinion that the jury committed manifest error in rendering a verdict awarding damages to the plaintiff for his personal injuries and the judgment based thereon is erroneous. The plaintiff’s demands are rejected at his cost.
Judgment reversed.