133 So.2d 129 (1961)
Kimball ARDOIN, Plaintiff & Appellee,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Defendant & Appellant.
No. 231.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
On Rehearing September 20, 1961.
Frugé & Foret, by J. Burton Foret, Ville Platte, for defendant-appellant.
Tate & Tate, by Paul C. Tate, Mamou, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is an action for damages arising out of a collision between plaintiff's truck, driven by Elwood P. Reed, and a truck owned and being driven by Marion Hoffpauir. Defendant was the public liability and property damage insurer of the Hoffpauir vehicle at the time of the accident. After trial of the case on its merits, judgment was rendered in favor of plaintiff and defendant has appealed from that judgment.
The accident occurred between 7:00 and 8:00 o'clock on the morning of November 24, 1958, on State Highway 13 between the Towns of Mamou and Eunice, in Evangeline Parish. The highway at that point is a straight, blacktopped, two-lane highway, with shoulders on both sides wide enough for large, heavy trucks to park on them without blocking either lane of traffic.
*130 Earlier that morning Hoffpauir had picked up a load of gravel in his dark blue Ford truck at a gravel pit located at Turkey Creed, Louisiana, about 25 or 30 miles from the scene of the accident. In traveling south on State Highway Route 13 toward Eunice, the Hoffpauir truck was following another gravel truck being driven by Roy Morgan. The weather that morning was extremely damp and foggy, and maximum visibility was limited to approximately 150 feet. The headlights of both of the vehicles involved in the accident were burning at the time the collision occurred.
When Hoffpauir was about five miles south of Mamou he noticed that the inside, right rear dual tire on his truck was flat. By using a pre-arranged signal with his headlights, Hoffpauir notified Morgan, who was driving the truck ahead of him, that he was in trouble. Upon seeing Hoffpauir's signal Morgan drove his truck on the right shoulder of the road and waited until Hoffpauir caught up with him. Hoffpauir parked his truck partially on the right, or west, shoulder of the road and partially on the blacktopped portion, the purpose of leaving a portion of his truck on the hardsurfaced part of the road being to provide a solid foundation for the jack which he intended to use in changing the tire. Although Hoffpauir knew that there was a grocery store with a graveled parking area located about two miles farther down the highway, he elected to stop immediately rather than to run the risk of ruining the flat tire by continuing to drive this additional distance to the parking area. Hoffpauir parked his truck in such a manner that the southbound lane of traffic was partially obstructed by that vehicle.
After Hoffpauir's truck had been parked in that position for a period of at least five or ten minutes, plaintiff's tank truck, which was being driven in a southerly direction on State Route 13, approached the parked Hoffpauir truck from the rear. Plaintiff's truck at that time was loaded with gasoline weighing approximately 12,000 pounds. Reed, the driver of plaintiff's truck, testified that immediately prior to the accident he was driving at a speed of 35 or 40 miles per hour, that he noticed an object on the highway about 130 or 140 feet ahead of him in the fog, and that he thereupon began to decrease his speed. When he reached a point from 60 to 80 feet from this obstacle, he realized that it was a parked truck (the Hoffpauir truck). Reed further testified that he then immediately applied his brakes and started to pass the parked truck on its left, but was unable to do so because at that time he met another vehicle approaching from the opposite direction. A collision then occurred, the right front fender and side of plaintiff's truck striking the left rear portion of the Hoffpauir vehicle. The evidence shows that at the time of the collision plaintiff's truck was traveling at a speed of from three to five miles per hour, that the impact caused the Hoffpauir truck to move forward only a few feet, and that plaintiff's truck was brought to a stop almost immediately.
Hoffpauir testified that during the entire time his truck was parked on the highway and at the time of the collision, the left rear directional light was blinking. He also testified that from the time he parked until the accident occurred, he was attempting to unlock the red reflectors which were attached to the side of his truck so that they could be used to warn approaching vehicles, but that he had been unable to do so. Although Roy Morgan was with him at that time, no attempt was made by Hoffpauir or by Morgan to take the flares or reflectors from Morgan's truck and use them in warning oncoming traffic. Also, no attempt was made by either of them to flag down approaching vehicles. Hoffpauir's testimony that his directional lights were blinking at the time of the accident is corroborated by the testimony of Morgan, but Reed testified that he saw no lights on the Hoffpauir truck as he approached it.
The trial judge found that Hoffpauir was negligent in failing to warn approaching *131 vehicles of the danger, although he had ample time within which to do so, in parking his truck in such a manner as to partially obstruct the hard-surfaced portion of the highway, and in failing to drive a little farther to a crossroad before bringing his truck to a stop. He concluded that these acts of negligence on the part of Hoffpauir constituted the sole proximate cause of the accident, and that the driver of plaintiff's truck was free from contributory negligence.
We find no manifest error in the conclusions reached by the trial judge that the driver of the insured truck had ample time within which to move his truck off the hard-surfaced portion of the highway, or to warn approaching motorists of the danger, and that he was negligent in failing to take either of these precautions under the circumstances presented here. LSA-R.S. 32:241, 32:442; O'Rourke v. McConaughey, La.App.Orleans, 157 So. 598; Hogue v. Akin Truck Line, La.App. 2 Cir., 16 So.2d 366; Giorlando v. Maitrejean, La. App.Orleans, 22 So.2d 564; Schneller v. Handy, La.App.Orleans, 93 So.2d 238.
Defendant, however, specially pleads in the alternative that the driver of plaintiff's truck was negligent in driving at an excessive rate of speed in the foggy weather which existed at that time, in failing to maintain a proper lookout, in failing to stop after seeing the parked truck ahead of him, and in failing to avail himself of the last clear chance to avoid the collision.
The jurisprudence of this State is well settled to the effect that when visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision, and as an extreme measure of safety it is his duty, when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have a right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, but if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. Demerest v. Travelers Insurance Company, 234 La. 1048, 102 So.2d 451; Pepper v. Walsworth, La.App. 2 Cir., 6 La.App. 610; O'Rourke v. McConaughey, supra; Hogue v. Akin Truck Line, supra; Giorlando v. Maitrejean, supra; Thiaville v. Toups, La. App.Orleans, 25 So.2d 361; Hecht v. Toye Bros. Yellow Cab Co., La.App.Orleans, 62 So.2d 520; Price-Dunham-Fenet Brick Mfg. Co. v. Reeves, La.App. 1 Cir., 85 So.2d 635; Schneller v. Handy, supra; Ervin v. Burns, La.App. 2 Cir., 126 So.2d 805.
In Demerest v. Travelers Insurance Company, supra, plaintiff brought suit to recover damages for the death of his wife who was killed when the car which she was driving was struck in a dense fog by a car driven by Blackwell, defendant's assured. In finding that Blackwell was negligent, and that his negligence was the proximate cause of the accident, the Supreme Court held that Blackwell had not met the standard of care required because he was operating his car at an excessive rate of speed, when atmospheric conditions limited his visibility to not more than 200 or 300 feet. The Supreme Court said:
"With reference to the particular circumstances which prevailed here the jurisprudence of this state is that: `* * * when visibility is materially impaired because of smoke, mist, dust, etc., a motorist should reduce his rate of speed to such extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision; and as an extreme measure of safety, it is his duty, when visibility ahead is not possible or greatly *132 obscured, to stop his car and remain at a standstill until conditions warrant going forward. * * *' Hogue v. Akin Truck Line, La.App., 16 So.2d 366, 368. See also Rector v. Allied Van Lines, Inc., La.App., 198 So. 516; Penton v. Sears, Roebuck and Company, La.App., 4 So.2d 547; Bernstein v. Cathey and Carrell Truck Lines, La. App., 32 So.2d 403 and Rachal v. Balthazar, La.App., 32 So.2d 483." [234 La. 1048, 102 So.2d 454]
In O'Rourke v. McConaughey, supra [157 So. 606], plaintiff's car stalled in the inside lane of a four-lane city street early on a foggy morning. Visibility was only five or six feet, but the lights on plaintiff's car were burning and a passenger in it was sounding the horn. Plaintiff's car was struck in the rear by an automobile driven by defendant. In finding that defendant's negligence was a proximate cause of the accident, and that defendant had the last clear chance to avoid the collision, the court of appeal said:
"Defendant was operating his automobile very slowly, yet he ran into plaintiff's car, which was stationary. He did not have his car under such control that it could be stopped within the radius of his vision or the penetration of his headlights. Plaintiff's negligence having expended itself, his car being stationary and having been thus for several minutes before the collision, defendant only was in a position to avoid the impact. His was the last clear chance. If the fog was too dense to permit a radius of vision in which his automobile could be stopped, it was his duty to proceed no further until he could see. * * *
"If it is the duty to stop where the vision is temporarily obscured as by a cloud of dust or smoke, it is the greater obligation where the obstruction to the sight is more permanent as in a blanket of dense fog. In the former instance the danger is temporary and passing, while in the latter it is permanent and continuous and he who travels thus does so at his peril. It is no defense that traffic might be delayed indefinitely and business interfered with, as considerations of convenience must ever give way to the safety of life and limb.
"The driver of an automobile has no right to assume that the road before him is open and to proceed ahead without regard to the safety of those who may be thereon. * * * While under certain circumstances creating an emergency the rule may be different, there is little or no excuse for running into a stationary object, particularly one which has been stationary for some time before the collision, whether it be daylight or dark, clear or foggy, misty or rainy. It is, therefore, our conclusion that this collision was caused by the negligence of defendant who had the last clear chance to avoid same."
In Hogue v. Akin Truck Line, supra [16 So.2d 368], the Court of Appeal, Second Circuit, said:
"It has been repeatedly held that when visibility is materially impaired because of smoke, mist, dust, etc., a motorist should reduce his rate of speed to such extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision; and as an extreme measure of safety, it is his duty, when visibility ahead is not possible or greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. Locke v. Shreveport Laundries, Inc., supra [18 La.App. 169, 137 So. 645]."
In Giorlando v. Maitrejean, supra [22 So. 2d 566], involving two collisions on a foggy morning, the Court of Appeal, Orleans, said:
"`It is settled law in Louisiana that one entering a fog, such as the one *133 pleaded and testified to here, must stop until sure of his way, or if he drives into it, he must proceed at such a speed as that he can stop the car in the distance within which he can see objects in his way. It will not do for such a one to say, as here, that he was driving 20, 15 or even 10 miles an hour. The evidence establishes that in the fog he did not see and could not see the object he ran into within the distance within which he could stop his truck, * *'"
In Schneller v. Handy, supra [93 So.2d 241], the Orleans Court of Appeal said:
"Plaintiffs, by invoking the doctrine of the last clear chance, have, in effect, conceded their own negligence, which we have little doubt of. They parked in the main traveled portion of the highway, at night, in a fog bank, when they were fully aware of the feasibility of parking on the shoulder thereof; however, plaintiffs' negligence had become passive at the time that the accident occurred and we, therefore, are of the opinion that the doctrine of last clear chance is applicable herein. Williams testified that when they reached the top of the bridge, a distance of approximately 215 feet removed from the situs of the accident, he informed his chauffeur that he noticed an `indiscernible' object in the roadway and that he should proceed with caution; as he was leaving the bridge, he again cautioned Handy that he believed the object to be an automobile parked or moving slowly in the roadway, nevertheless, Handy continued driving at a speed of twenty to twenty-five miles per hour with very poor visibility of the roadway until he was too close to avoid colliding with the left rear end of the plaintiffs' trailer. We are convinced that if Handy had exercised the slightest caution commensurate with the prevailing condition of the road, the weather and the darkness, he could easily have avoided both the collision and the injuries which resulted therefrom. If the fog was too dense to permit a radius of visibility in which his automobile could be stopped, it was his legal duty to move no further until he could see. * * *" (Emphasis added.)
In the recent case of Ervin v. Burns, supra [126 So.2d 808], which involved facts similar to those presented in the instant suit, the Second Circuit Court of Appeal held that:
"* * * Obviously, the existence of a dense fog, screening one's view of the highway, is a condition requiring the exercise of the utmost caution and prudence. It is generally recognized in the jurisprudence that a driver of an automobile is under a duty to stop his car when his vision is entirely obscured by a temporary obstruction such as a cloud of dust or smoke. When failure to do so would jeopardize the safety of others, then he must stop and remain at a standstill until the obstruction to his view has come to an end. It is likewise a rule well established that, where a motorist finds himself blinded, whether by bright lights, smoke, dust, fog, or for any other reason, it is his duty to at least bring his vehicle under such control that it can be stopped in a moment in case of emergency, and, in extreme cases, it is his duty to stop."
In the instant case, the driver of plaintiff's truck testified that if he had attempted to stop immediately after he saw the Hoffpauir truck ahead of him, he would have been able to do so in time to avoid the collision, but that he did not make any attempt to stop because he thought it was an "on-going truck, whatever it was on the road." The fact that plaintiff's truck was being driven with a heavy load at a speed of 35 or 40 miles per hour, that visibility was extremely limited because of a dense fog, and that the driver of plaintiff's truck saw the Hoffpauir vehicle in ample time to *134 stop but did not do so, convinces us that plaintiff's driver, Elwood Reed, was negligent either in operating his truck at an excessive rate of speed under the existing atmospheric conditions or in failing to bring his truck under control after observing an obstacle in the road ahead of him. These acts of negligence on the part of plaintiff's driver, in our opinion, constitute proximate and contributing causes of the accident, barring plaintiff from recovering.
Counsel for plaintiff contends, however, that the driver of plaintiff's truck had a right to assume that in the absence of any flares or warning lights the road ahead was clear, and that any traffic ahead in his lane of travel would also be moving. In support of this argument he cites the cases of Simms v. Lawrence Bros., La.App. 2 Cir., 72 So.2d 538 and Vines v. Protective Indemnity Co., La.App. 2 Cir., 37 So.2d 545.
In both the Simms case and the Vines case the stationary vehicle was parked on a curve in the highway, in such a position that the lights of the approaching car did not illuminate the parked vehicle and the driver of the approaching automobile was unable to see it in time to avoid a collision, even though he was exercising due diligence. In each case the accident occurred at night. In the Simms case there was a fog, but in the Vines case there was none. In each of these cases the Second Circuit Court of Appeal recognized the general rule that a motorist should never drive his vehicle in the nighttime at a speed so fast that it cannot be stopped within the distance illuminated by its headlights, but it held that because of the unusual circumstances presented in each of those cases they came under an exception to this general rule.
Exceptions to this general rule have been recognized many times by the appellate courts of this State. Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377; Rea v. Dow Motor Co., La.App. 2 Cir., 36 So.2d 750; Cole v. Burgess, La.App. 1 Cir., 31 So.2d 450; Warnick v. Louisiana Highway Commission, La.App. 1 Cir., 4 So. 2d 607; Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909, 913. In Vowell v. Manufacturers Casualty Ins. Co., supra, the Supreme Court said:
"Our rule that a motorist traveling on the public highways after dark or during a rainstorm, fog, or other abnormal condition, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an exception to the general rule that a motorist may assume that the road is safe for travel even at night. But that exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway. * * *"
In the instant suit, however, the collision occurred on a straight highway, the lights on the parked truck were burning, its directional signals were blinking, and the driver of plaintiff's truck saw the parked vehicle in time to have avoided the accident. Under these circumstances, we conclude that the general rule applied here and that this case does not come under an exception to that rule, as did the Simms and Vines cases. Plaintiff's driver, therefore, was negligent in failing to bring his truck to a stop or to maintain control over it after he saw an object in the road ahead of him. He did not have the right to assume that any traffic which he might encounter ahead of him in his lane of traffic would also be moving.
Counsel for plaintiff further contends that Hoffpauir had the last clear chance to avoid the accident "by setting out flares or signals," and that his negligence in failing to do so was a proximate and contributing cause of the collision. We find no merit to this argument, because the evidence fails to show that Hoffpauir by exercising *135 reasonable diligence could have done anything to avoid the accident after he discovered or should have discovered his position of peril.
While we find no manifest error in the conclusions of fact reached by the trial judge, we are convinced that he erred in determining from those facts that Elwood Reed, the driver of plaintiff's truck, was free from contributory negligence.
For the reasons herein assigned, therefore, the judgment of the trial court is reversed, and judgment is hereby rendered in favor of defendant, Southern Farm Bureau Casualty Insurance Company, and against plaintiff, Kimball Ardoin, rejecting plaintiff's demands and dismissing this suit at his costs including the costs of this appeal.
Reversed.
SAVOY, J., dissents, being of the opinion that the judgment of the trial judge is correct.

On Rehearing
Before TATE, HOOD, SAVOY, CULPEPPER, Judges and W. W. THOMPSON, Judge ad hoc.
W. W. THOMPSON, Judge ad hoc.
In this case plaintiff sued for damages occasioned to his fuel truck loaded with gasoline and being driven by his employee, Elwood P. Reed, when its right front collided with the left rear of a parked dark blue Ford gravel truck owned and operated by Marion Hoffpauir, defendant's assured.
The District Court rendered judgment in favor of plaintiff and defendant appealed.
The appeal was heard by a panel of Judges of this Court, consisting of Judges CULPEPPER, HOOD and SAVOY. With Judge HOOD writing the opinion and Judge SAVOY dissenting, the majority of the panel reversed the judgment of the District Court and dismissed plaintiff's suit at his costs. This Court, sitting en banc, granted rehearing and the case is now before the whole Court for final determination, with the author of this opinion sitting as Judge ad Hoc in the place of Judge FRUGE, recused because of relationship to one of the attorneys.
The facts are, substantially, as follows:
Early in the morning of November 24, 1958, at about eight o'clock, Roy Morgan and Marion Hoffpauir, were each driving a gravel truck owned by him, in a southerly direction on Highway 13 in Evangeline Parish. Hoffpauir was following Morgan at a distance of 400 to 500 feet, when Hoffpauir suffered the misfortune of having a flat tire on one of his right rear wheels. By use of a pre-arranged signal with Morgan, flashing his headlights on and off, Hoffpauir signalled Morgan to stop, which he did, and drove his truck completely off the traveled or paved part of the road and onto the shoulder, and Hoffpauir then drove up behind Morgan but stopped his truck about 20 or 25 feet behind the Morgan truck, and left his truck partially on the black-top or traveled part of the road. The countryside, as well as the scene of the accident, was enshrouded in a dense fog. The extent of the visibility was variously estimated by the several witnesses at from 15 to 150 feet. State Highway 13 is a two lane State Highway, paved with asphalt (commonly called a "black-top"), running in a north-south direction, the paved slab being 18 feet wide. Insofar as it may be said to have effected the occurrence of the accident, in this case, the road may be said to be straight and level. At the point where the accident occurred, the road has shoulders, at least sufficiently wide and firm to accommodate the parking of such a truck as was the Hoffpauir truck, as Morgan did park his completely on the shoulder. Hoffpauir and Morgan both said that the tire could not have been changed on the shoulder of the road because, due to the slope of the shoulder, the truck would have leaned and/or tilted to the extent that it would have fallen off the jack and had it been driven on to a place level and firm enough to permit the changing of the tire, *136 the tire would have been damaged or ruined, at considerable expense to Hoffpauir. Such were the reasons for parking it partially on the black-top.
Elwood P. Reed, employed by plaintiff, was driving plaintiff's fuel truck loaded with gasoline also in a southerly direction, on the same road and according to his testimony, driving at 35 to 40 miles per hour. He said that when he reached a point, 130 to 140 feet from the parked truck, he saw an "obstacle" on the road ahead of him. Reed's own description of what followed was as follows:
"When I got to 130 to 140 feet I saw an obstacle in the road, so I figure I cut down on my speed a little bit and I realize by that time I realize it was a stopped truck and I say I was about anywhere between 60 to 80 feet, when I noted the truck was stopped and then I applied my brakes and I hit him."
He later testified that it was a matter of seconds after seeing the "obstacle", when he realized it was a stopped truck. "I thought it was an ongoing truck whatever it was on the road, there was no light, no flares, then I realized it was stopped at the same second." He said in effect that when he first realized the obstacle was a stopped truck, that is when he was 60 to 80 feet away from it, he at first thought he could go around it, to his left, but seeing another car coming in the North bound traffic lane, he realized he could not accomplish that maneuver, and then it was that he applied his brakes and began trying to stop. He also admitted that had he begun trying to stop when he first saw the obstacle 130 to 140 feet ahead of him, he could have avoided striking the obstacle, the truck, but it was then too late to avoid a collision. He did succeed in reducing his speed, before the collision until, according to his estimate, he was going from 3 to 5 miles per hour when the collision occurred. Mr. Hoffpauir testified that his left blinker (directional) lights, front and rear, were blinking at the time of the accident. Morgan remembered that both were blinking before the accident, but only the front one was blinking after the accident. He explained that blinker lights are often accidentally turned off by a slight turning of the steering wheel. The State Trooper who investigated the accident, about two hours after the accident, said the left rear blinker was not then working but the left front one was. He said that the left rear parking light had been smashed by the collision.
There is considerable testimony in the record tending to prove the exact time of day at which the two gravel trucks had been loaded with gravel at Turkey Creek, 25 to 30 miles away from the scene of the accident. It is assumed that the testimony was intended as tending to prove a circumstance that might indicate the length of time the truck had been parked on the road before the accident occurred. But in the absence of any proof as to the rate of speed at which they drove from Turkey Creek to the place where the accident occurred, the testimony as to the time they left Turkey Creek becomes without value. Morgan and Hoffpauir said they had not been parked more than 5 to 10 minutes. Two apparently distinterested witnesses, Messrs. Bertrand and Fontenot, testified, Mr. Bertrand saying he saw the parked truck there "right before seven" and Mr. Fontenot said he saw them there at approximately 7:15. However, the learned District Judge held, as a fact, that Mr. Hoffpauir had ample time, "as much as 30 minutes," in which to warn traffic. It not being manifest, from the record, that the Trial Judge's finding of fact was erroneous, we accept his finding that the trucks had been parked as much as 30 minutes before the collision occurred.
We agree with the Trial Court that Hoffpauir was grossly negligent in parking his truck partially on the traveled part of the road in such dense fog, and especially in not immediately taking whatever steps that were necessary to see that *137 any oncoming traffic had warning of the existence of the hazard he had thus created. It is true, according to the testimony of Hoffpauir and Morgan, who testified that the truck had been parked from five to ten minutes when the collision occurred, that Hoffpauir, during that time, was unsuccessfully trying to disengage the warning flares, which he had locked on the side of the bed of his truck, so as to place them on the road as required by law. He failed to get the flares unfastened, hence, never did get them placed on the road. No effort was made, however, either by Hoffpauir or Morgan, who was on the scene assisting Hoffpauir, to return a short distance up the road to the north and flag or warn oncoming vehicles of the presence of the parked truck. Nor were the flares which Morgan said he had on his truck attempted to be used. Reed said he saw no lights of any kind.
In parking as he did, Hoffpauir violated one of the best known rules of the road, one so well and universally recognized that it was made statutory by incorporating it in Paragraphs A and B of Section 241 of Title 32 of the Revised Statutes of 1950, LSA-R.S., reading as follows:
"No person shall park any vehicle, attended or unattended, upon the main traveled portion of any highway, outside of a business or residence district, when it is practicable to park it off the main traveled portion of the highway. In no event shall any person park a vehicle, attended or unattended, upon a highway unless an unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such parked vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle exists from a distance of at least two hundred feet in each direction upon the highway. Even then, if such vehicle is left parked, attended or unattended, one half hour after sunset or one half hour before sunrise, the person parking it shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence. Whenever any police or traffic officer finds a vehicle parked upon a highway in violation of this Section, he is authorized to move it, have it moved, or to require the person in charge of such vehicle to move it to a position permitted under this Section.
"The provisions of this rule shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic."
We have found no difficulty in agreeing with the Trial Judge that Hoffpauir was grossly negligent, but we have not been able to agree with him that Hoffpauir's negligence constituted the sole cause of the accident. We believe that Reed, the driver of plaintiff's truck, was also obviously negligent in his operation of that truck.
We think the rule laid down by the Orleans Court of Appeal, in O'Rourke v. McConaughey, 157 So. 598, 606, regarding the conduct of drivers of motor vehicles when their vision is impaired by such agencies as smoke, fog, dust, rain, bright lights, etc., is the prevailing one in Louisiana. We quote from that opinion as follows:
"Defendant was operating his automobile very slowly, yet he ran into plaintiff's car, which was stationary. He did not have his car under such control that it could be stopped within the radius of his vision or the penetration of his headlights. Plaintiff's negligence having expended itself, his car being stationary and having been thus for several minutes before the collision, defendant only was in a position to avoid the impact. His was the last clear chance. If the fog was too dense *138 to permit a radius of vision in which his automobile could be stopped, it was his duty to proceed no further until he could see. * * *
"If it is the duty to stop where the vision is temporarily obscured as by a cloud of dust or smoke, it is the greater obligation where the obstruction to the sight is more permanent as in a blanket of dense fog. In the former instance the danger is temporary and passing, while in the latter it is permanent and continuous and he who travels thus does so at his peril. It is no defense that traffic might be delayed indefinitely and business interfered with, as considerations of convenience must ever give way to the safety of life and limb.
"The driver of an automobile has no right to assume that the road before him is open and to proceed ahead without regard to the safety of those who may be thereon. * * * While under certain circumstances creating an emergency the rule may be different, there is little or no excuse for running into a stationary object, particularly one which has been stationary for some time before the collision, whether it be daylight or dark, clear or foggy, misty or rainy. It is, therefore, our conclusion that this collision was caused by the negligence of defendant who had the last clear chance to avoid same."
We are well aware that, from time to time, because of unusual circumstances existing in particular cases, Courts have recognized exceptions to the general rule laid down in the O'Rourke Case. Among those cases, in which exceptions to the general rule are applied, are the following and, perhaps, others, to-wit: Robards v. American Automobile Insurance Co. (Court of Appeal, First Circuit), 128 So.2d 44, 45; Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1; Gaienne v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720.
In the majority opinion rendered by the Panel of Judges of this Court, on the original hearing, the Court reviewed quite a number of cases adhering to the rule laid down in the O'Rourke case, supra, and reviewed quite a number of those cases in which exceptions to that rule were made, some of which are listed above.
However, we see no exceptional circumstances in the instant case that we believe would justify our failure, in this case, to adhere to the general and prevailing rule, nor do we believe that it would serve any useful purpose to again review the same jurisprudence that was so carefully reviewed in the original opinion.
There are, however, one or two other cases, which we believe are closely analogous to the instant case and to which we will briefly refer.
The first is Jones v. Burke, et al., 51 So. 2d 322, 329, decided by the Court of Appeal of the former First Circuit, with the late Judge Dore writing the Court's opinion. In that case Plaintiff, Jones, was driving at night in the rain, when he saw what appeared to be a "shadow" on the road on an incline that he was beginning to ascend. He removed his foot from the accelerator, but before he could identify the "shadow" as a vehicle in his path, it was too late to go around the vehicle which the shadow proved to be, or to stop before striking it, he collided with it. The "shadow" proved to be a parked truck and trailer, with no flares out, although there had been sufficient time in which to place such flares. In refusing to permit Plaintiff to recover, Judge Dore said:
"When atmospheric conditions are bad the duty incumbent on a driver to maintain a sharp lookout ahead becomes even stronger than when conditions are normal; and if he sees slightest evidence to indicate that there is danger ahead he should slow down immediately, *139 and begin to prepare for what might come."
We think that when Reed, in the instant case, saw what he termed an "obstacle" 130 to 140 feet ahead, and he could not identify that object or "obstacle", he should have been thereby warned that there was possible danger ahead and like Judge Dore said Jones should have done, Reed should then have immediately slowed down and "[begun] to prepare for what might come." He admitted that had he then, at that moment, tried to stop, he could have done so before striking the Hoffpauir truck and we believe his failure to do so constituted the last clear chance of avoiding the accident that anybody had and so proximately contributed to the happening of the accident, as to bar his employer's recovery herein.
The Jones case was approvingly cited by the Court of Appeal, First Circuit, in Bickford v. State Farm Mutual Automobile Insurance Co., 129 So.2d 491, 493. In that case the Court pointed out that when plaintiff was 200 to 250 feet from the parked truck of defendant's assured, he, plaintiff, knew that there was something ahead of him and in his lane of traffic (just as Reed saw the "obstacle" when he was 130 to 140 feet away) but he didn't know exactly what it was. The Court said: "Irrespective of what the object might have been, it was his duty to, at that time, bring his car under control in order to avoid the possibility of an accident." The facts in the Bickford case further parallel the present case, in that plaintiff at first thought he might be able to go around the parked truck but could not do so, because of the approach of another car in the other lane of traffic.
Another case which we feel should be especially noted is that of Rector v. Allied Van Lines, Inc., et al., 198 So. 516, in which the Court of Appeal with Mr. Justice Hamiter as its spokesman, held:
"Evidence that truck driver first observed automobile parked partly on paved portion of highway when only 20 to 30 feet from automobile, that lights of truck were good and that motorist who passed automobile shortly before truck struck parked automobile saw automobile when from 90 to 120 feet away and was able to maneuver his automobile to avoid a collision established that truck driver failed to maintain a proper lookout ahead.
"Where automobile occupants were negligent in parking automobile partly on traveled portion of highway and in failing to maintain appropriate signal lights, but driver of truck which struck automobile was guilty of negligence in failing to maintain proper lookout ahead, the `last clear chance doctrine' applied, since negligence of truck driver was proximate and immediate cause of accident, whereas negligence of automobile occupant was the remote cause. Act No. 21 of 1932, § 3, rule 15."
In the Rector case, shortly after 1 o'clock a. m., a large motor truck driven by Walt McCampbell crashed into the rear of a Chevrolet sedan that was parked partially on the traveled part of a paved highway. The truck was driven by McCampbell and owned by defendant, Allied Van Lines. Perhaps the lights of the Chevrolet were on when the occupants parked it on the road and then went to sleep, but the Court said it seriously doubted that said condition endured until the moment of the accident. The Court held that the occupants of the Chevrolet were negligent "as a matter of law," but it also held that obviously McCampbell, the driver of the defendant's truck, was also negligent in the operation of the truck. Either he failed to maintain the required control of such truck and contravened the well recognized principle of law that a driver of a motor vehicle at night, in encountering view impairing agencies such as bright lights, fog, dust, rain or smoke, must reduce the speed of the machine so that he will be able to stop within the distance *140 that the highway is illuminated by the lights, or he was not keeping the proper lookout that the law demands. His breach of either of these rules of the road constituted active negligence; while the negligence of the occupants of the Chevrolet was only passive.
Having the views expressed, the judgment originally rendered herein reversing the judgment of the District Court and dismissing Plaintiff's suit at his costs is reinstated and made the final judgment of this Court.
Original judgment rendered herein reinstated.
FRUGE, J., recused.