## No. 2384.

## Second Circuit.

---

## JOHNSTON, ET AL., v. WORLEY.

---

(April 10, 1926. Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest — Automobiles — Par. 4 (b).**

The party driving an automobile first reaching a street intersection has the right of way, provided that there is no ordinance or regulation making either one of the streets a right of way street.

2. **Louisiana Digest—Automobiles—Par. 4, 4 (b).**

The party driving an automobile who first reaches a street intersection, having the right of way, the other party must respect that right, and if he fails to do so he is guilty of negligence.

3. **Louisiana Digest—Automobiles—Par. 4.**

Where an intersectional automobile collision occurred about dusk the fact that the plaintiff's car had no lights does not make him contributorily negligent, if the surroundings were well lighted and this fact did not contribute towards the collision.

4. **Louisiana Digest—Appeal—Par. 625.**

Where the amount of damages given by the trial court in an automobile collision is clearly correct it will be affirmed.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. E. P. Mills, Judge.

Action by J. E. Johnston, et al., against P. C. Worley for damages resulting from an automobile collision.

There was judgment for plaintiffs, and defendant appealed.

Judgment affirmed.

Cook and Cook, of Shreveport, attorneys for plaintiffs, appellees.

Tinsley Gilmer, of Shreveport, attorney for defendant, appellant.

ODOM, J. This suit grew out of an automobile collision which took place on or about February 26, 1924, between plaintiffs' automobile and that of defendant at a public street crossing in the city of Shreveport.

Plaintiffs allege that the collision was due solely to the gross fault and negligence of the defendant, Dr. Worley, who was driving his car at the time.

Defendant, in answer, denied that he was negligent in the operation of his car, and, in the alternative, in case the court should hold that he was guilty of negligence, he set up that plaintiffs' car was being operated in a negligent manner in that it was being driven without lights in the dark at a rapid rate of speed, and that the driver of plaintiffs' car was guilty of contributory negligence, which was the prime and main cause of the accident, and which contributory negligence precludes recovery.

Plaintiff sued for $571.05 damages to his

car, and for $60.00 for medical and surgical attention to his wife, who was in the car at the time, and who is alleged to have been injured. His wife, Mrs. Virgie Marshall Johnson, joined him in the suit and asked for damages amounting to $500.00 for injuries to her ankle and suffering caused by the shock and injuries.

The lower court awarded plaintiff, J. E. Johnston, $571.05 and Mrs. Johnston $300.00. From this judgment defendant appealed.

## OPINION.

The collision between the automobiles took place at the intersection of Criswell Street, which runs approximately north and south, and Wilkinson Street, which runs approximately east and west. Dr. Worley was driving his car going north on Criswell Street. Plaintiff's car was being driven by Miss Stephenson, going east on Wilkinson Street. In plaintiff's car with Miss Stephenson was plaintiff's wife, and with Dr. Worley in his car were his wife and Miss Mildred Reed, all of whom, along with others, were called as witnesses.

There was considerable controversy as to the time the collision took place; but the testimony satisfies us that it was about 7:00 o'clock p. m., and that at that time it was about dark. None of the witnesses say it was altogether dark, but they all say the street lights were on and that the residences were lighted. Miss Stephenson, who was driving the Johnston car, says that she does not recall that she had turned on her lights, but says she did not need them, as it was not dark.

Mr. Trichel, who lives on the corner at the intersection of these streets, testified that he heard the crash and at once looked at his watch, and that it was five minutes to seven o'clock. Other witnesses, including Miss Stephenson and Mrs. Johnston, say it was earlier than that, but their testimony is mostly based upon estimates and is not accurate.

However, we think the question whether it was dark or whether there was sufficient daylight to enable one to operate an automobile with safety without lights is not material, for the reason that on the northeast corner of the intersection of these streets there was a bright electric street light, which brilliantly lighted not only the intersection, but lighted Wilkinson Street, the one on which the Johnston car was being driven, for quite a distance in the direction from which the car was coming.

There is some testimony to the effect that there are some pine trees along the north edge of Wilkinson Street west of Creswell, which might have shaded the street and obstructed the view, but that is not true. A view of the premises discloses that the trees are over on private property and that the branches do not extend over the sidewalk, much less over the street, and that the light is about thirty feet high, attached to a pole, which stands at the northeast corner of the intersection, about on the west line of the sidewalk, which line is approximately eight feet west of the property line.

Not only does this electric light illuminate perfectly the intersection of these streets, but it illuminates the streets themselves for at least one hundred feet away.

There is no reason, therefore, why Dr. Worley should not have seen the Johnston car coming up Wilkinson Street, even if it was at night, and even though the Johnston car had no light; and likewise there was no reason why the driver of the Johnston car should not have seen Dr. Worley's car coming north on Creswell Street before it reached the intersection. In fact, Miss Stephenson, the driver of the Johnston car, said she did see the Worley car

before it reached the intersection, and we have no doubt that is true.

At the southwest corner of the intersection of these streets is an apartment house which stands back some sixty feet from Wilkinson and twenty-four feet from Creswell Street, and there is nothing in the yard to obstruct the view across that corner.

Neither of these streets at that point is a right of way street, and at that time there were no markings on either of them to warn the drivers of vehicles to go slow. Therefore, the rights, obligations and duties of these parties at that intersection were equal.

As the case hinges on the question of negligence, in order to determine that question it becomes necessary to ascertain from the facts which of the parties, if either, had the right of way at the intersection by virtue of custom or the law of the road.

The rule as we find it, in the absence of statutory regulations, is that the party first reaching an intersection, has the right of way, provided that there is no ordinance or regulation making either one of the streets a right of way street.

In Huddy on Automobiles, 6th edition, page 459, the rule is stated as follows:

"When two vehicles are approaching a street intersection on different streets, neither is justified, as a general rule, in assuming that the other will slacken his speed so as to give him priority at the crossing." (Citing a Pennsylvania case.) "When one sees that there is apparent danger of a collision, it accordingly would seem to require that he decrease his speed, or, if both discover the danger at the same time, each should take steps to avoid the impending collision. (Citing authorities.) But where a vehicle reaches the crossing distinctly ahead of one approaching on the intersecting street, the one first arriving is generally regarded as having the right of way."

In the case of Mayer vs. Mellette, 114 N. E. 241, the court said:

"Since plaintiff was much nearer than defendant to the intersection, which the two, in their automobiles, were approaching just before the collision occurred, and as the record discloses no ordinance or regulation to the contrary, the plaintiff apparently had the right of way, and, in the absence of an indication that it was imprudent to do so, she was authorized to go forward."

In the case of Yuill vs. Berryman, 94 Wash. 458 (162 Pac. 513), the court said:

"The driver of an automobile first entering the intersection of two streets of equal width, running in opposite directions, is entitled to the right of way over another automobile about to enter upon the street, and it is the duty of the other driver to slacken his speed or to stop his car, so as to prevent a collision."

\* \* \* \*

"It is the duty of the driver of an automobile who is proceeding toward an intersection to see and avoid colliding with another driver who first enters upon the intersection of the two streets, and where he fails to do so, he is guilty of negligence."

In 21 A. L. R. 974 (note) the rule is thus stated:

"In the absence of statute or ordinance regulating the matter, it is a general rule that the vehicle entering the intersection of streets first is entitled to the right of way, and it is the duty of the driver of another vehicle approaching the crossing to proceed with sufficient care to permit the exercise of such right without danger of collision."

This text is supported by decisions from Illinois, Indiana, Missouri, Nebraska, Pennsylvania and Washington.

We have not been cited to any decisions of our own courts on this particular point and we have not been able to find any. But the rule is well established in other jurisdictions and seems to us sound.

The party who first reaches the intersection having the right of way, it follows necessarily that the other party must respect that right, and if he fails to do so he is guilty of negligence.

In the case at bar, the testimony of the witnesses and the physical facts convince us that the Johnston car was first at the intersection and had the right of way; and the testimony further convinces us that there was no reason why Dr. Worley, who was driving his car, should not have observed the approach of the Johnston car as it went into the intersection.

According to Dr. Worley's testimony and that of his wife and Miss Reed, he was driving north on the south side of Creswell Street at a speed of about fifteen miles an hour and was about four to eight feet from the curb.

The testimony shows that the Johnston car was being driven east on Wilkinson Street at a speed of between fifteen and twenty miles an hour, but the testimony is not very clear as to whether it was on the south side or in the middle of the street.

There is conflict in the testimony as to the exact spot where the collision took place. According to Dr. Worley and his witnesses, it took place at or near where a line drawn north and south along the east edge of Creswell Street would cross Wilkinson Street. According to the other testimony and the skid marks and the glass found after the collision, it occurred east of such line, on the intersection and well within Wilkinson Street.

The decided preponderance of the testimony is to the effect that when the collision took place the Johnston car had entirely crossed Creswell street. Mr. Vatter, who viewed the scene, says that shattered glass was found on the north side of Wilkinson Street ten or fifteen feet east of Creswell Street. Mrs. Johnston says the Worley car struck hers a car's length east of Creswell Street. Bennett Johnston found glass fifteen feet east of Creswell Street. Other witnesses noted glass further out Wilkinson Street. Mr. O. Dickson, who lived on Creswell Street, says that he had just arrived at his home when he heard the crash. He was half a block, plus seventy feet, away, and says he could see Wilkinson Street—

"* * * but the accident did not occur directly in the line of Creswell Street * * *" and, further, that the accident occurred between Creswell Street and Highland Avenue (Highland Avenue is east of Creswell), and that if it had taken place in the intersection he could have seen it.

It is therefore well established, we think, that the Johnston car had gotten entirely across Creswell before it was struck by the Worley car. The undisputed testimony is that the left front fender of the Worley car struck the Johnston car on the rear and a little to the left of the right rear fender—that it rammed the Johnston car from the rear, and not from the side.

Dr. Worley's account of the accident is that when the Johnston car came immediately in front of his car he saw that if he went straight ahead or if he turned to the left, he would strike the Johnston car broadside, and that in order to avoid that he turned his car to the right as quickly and as far as he could, and that at or about the same time the driver of the Johnston car, in order to avoid a collision, turned to the left, over toward the north edge of Wilkinson Street, which threw the rear end of the car in front of him, which accounts for the way he struck it.

The Johnston car was turned over on its left side, and was shoved down east on the north side of Wilkinson Street, and stopped about forty feet east of Creswell Street.

Dr. Worley says that he hit the Johnston car when it was about the middle of Wilkinson Street, and the physical facts show that he hit it after he had swerved his car to the right, and after the Johnston car had swerved to the left. He says that he first saw the other car when it came immediately in front of him, and that he was then only four feet from it.

Assuming that Wilkinson Street is thirty feet wide from curb to curb, it therefore follows that when he first saw the other car he had gotten less than eleven feet into the intersection or into Wilkinson Street. Creswell Street is a little wider than Wilkinson Street. The Worley car was on the east side of Creswell, and the collision took place east of that street. It therefore follows that the Johnston car was the first to reach the intersection, for it had gone entirely across Creswell, a distance of thirty feet, whereas the Worley car had gone only about one-fourth of that distance into the intersection at the time the collision took place.

There is some conflicting testimony as to the skid marks made by each of the cars, but our finding from the testimony as a whole is that the Johnston car reached the intersection distinctly ahead of the Worley car, and for that reason it had the right of way.

Dr. Worley was very negligent in approaching the intersection. He says he did not see the Johnston car until it came immediately in front of his car, and then he was only four feet from it. That shows that he did not look, for if he had looked he would have seen the approaching car. Not only the intersection, but Wilkinson Street for some distance in the direction from which the Johnston car was coming, were illuminated by the electric light on the corner. In addition to that light, according to Dr. Worley's testimony, there were two cars coming down Creswell Street, meeting him, with lights on. They were on the west side of the street and their lights necessarily lighted the intersection. Dr. Worley testified that he was watching the approaching cars, and we think that accounts for the fact that he did not look to see if a car was approaching the intersection, going east, on Wilkinson Street. The apartment house on the southwest corner was far enough back from the street to afford a clear view of Wilkinson Street west for a considerable distance, so that if Dr. Worley had looked to the left before reaching the crossing he could have seen the approaching car.

Defendant charges that the driver of plaintiff's car was guilty of contributory negligence in that the car had no lights and that she was driving at a reckless rate of speed.

But the absence of lights on the Johnston car in no way contributed to the accident, for the reason that the whole surroundings were well lighted and cars could be seen at that time practically as well as if it had been daylight.

Plaintiff's car was not being driven at an excessive rate of speed, about fifteen or twenty miles an hour, but little in excess of the speed at which defendant was going.

We think the accident was caused by defendant's negligence, and that the driver of plaintiff's car did not contribute thereto.

AS TO THE AMOUNT OF DAMAGES.

Counsel for defendant, in brief filed in this court, makes no complaint at the amount awarded by the District Judge. We think his findings and award are amply supported by the testimony.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs.