### ALENGI v. HARTFORD ACCIDENT & INDEMNITY CO. et al.

### CARBONE v. SAME.

Nos. 5086, 5087.

Court of Appeal of Louisiana. Second Circuit.

April 3, 1936.

Rehearing Denied April 30, 1936.

For former opinion, see 183 La. 847, 165 So. 8.

Harry V. Booth and Chas. L. Mayer, both of Shreveport, for appellant.

Dimick & Hamilton, of Shreveport, for appellees.

HAMITER, Judge.

When these motor vehicle collision cases were previously before us for review, we considered only the matter of quantum, as the appeal taken by plaintiffs was restricted to that item. Defendants did not appeal from the trial court's judgment, but filed answers to the appeal and prayed that all issues be reviewed and that plaintiffs' demands be rejected in toto. Our decree directed an increase in the amount of damages awarded. 162 So. 218.

Thereafter, on application of defendants, the Supreme Court granted a writ of certiorari, reversed and annulled our judgment, and remanded the cases to this court with instructions to consider all issues raised in the answers to the appeal. 183 La. 847, 165 So. 8. The cases are presently before us pursuant to that order.

Emile Carbone and Charles Alengi, Italian farmers, jointly operated a truck farm on the Harts Island road a few miles from the corporate limits of the city of Shreveport. At or about the hour of 5 o'clock on the morning of March 9, 1934, this being before daylight, these plaintiffs were proceeding in a Dodge truck loaded with vegetables, with Carbone driving, in a northerly direction over the viaduct on Market street in said city, with the view and purpose of marketing the vegetables. On reaching a point immediately beyond the north end of the viaduct, a collision resulted between plaintiffs' truck and a Plymouth coach, owned and being driven by defendant Brosnan, an employee of Maison-Jurelle, Inc., which was in the act of making a U-turn there. During the previous hours of that morning and the last few hours of the preceding evening, Brosnan and a young lady companion had enjoyed and partaken of the popular pleasures of dancing and dining, and, at the time of the accident, he was engaged in escorting her home. For the purpose of discharging his passenger in front of her residence, which was located on the east side of Market street, he drove

south along that street until he neared the north end of the viaduct, rather than continue a considerable distance to the next street intersection, and then began the execution of his U-turn. Brosnan had completed slightly more than half of the turn when the collision occurred. The truck was proceeding on its right-hand side of the roadway.

The issues raised by defendants' answers to the appeal are the following:

1. Negligence of defendant Brosnan.

2. Contributory negligence of plaintiffs.

3. Liability of Hartford Accident & Indemnity Company as Brosnan's alleged insurer.

4. Quantum of damages.

We shall attempt to discuss these issues in the order in which they are listed.

The preponderance of the evidence is to the effect that the U or reverse turn was attempted by Brosnan on Market street between intersections. Neither he nor his companion saw the oncoming truck until the collision took place, although their vision was unobstructed for a distance of several hundred feet and the viaduct was brightly illuminated with burning ornamental lights. Brosnan approached on his right side of the street at a rate of speed of from 15 to 20 miles per hour, then slowed his car, and was making the turn, without warning and a short distance in front of plaintiffs' truck, in high gear at a speed of from 5 to 10 miles an hour. His Plymouth was not stopped at any time during, or immediately prior to, the execution of the turn, until the occasion of the accident.

■■ It is well recognized that the making of an ordinary left turn at a street intersection is a hazardous vehicular maneuver, and a duty is imposed on the driver attempting it to keep a proper lookout, give the necessary signals, and proceed carefully and cautiously with due regard for the safety of others. Payne v. Prestridge, 16 La. App. 479, 133 So. 512. And the attempted execution of a complete turnabout between street intersections, within the corporate limits of a thriving and progressive city, is even more, if not exceedingly, perilous, requiring unusual and extraordinary care and caution on the part of the motorist.

The danger of such a turn was appreciated by the Legislature when it enacted paragraph (a), rule 9, section 3 of Act No. 21 of 1932, which reads: "The driver of any vehicle on the public roads, highways and bridges of this State shall ascertain, before turning around upon any such road, highway or bridge, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly or unnecessarily delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless and until the said way is clear." It is to be noted that the Dodge truck, according to this provision, was vested with and was enjoining the right of way in proceeding north on its right side of the street.

From the foregoing facts we can only conclude that Brosnan was neither keeping a proper lookout, nor proceeding cautiously and carefully as was his duty, and, therefore, he was grossly negligent in the attempted accomplishment of his reverse turn.

Proceeding to the next issue, we find defendants contending that plaintiffs were contributorily negligent in that: (1) Their truck possessed only one lighted headlamp, and that its brakes were in improper condition; and (2) that Carbone, the driver of the truck, saw Brosnan begin the turn and did not avoid the collision, although he had sufficient time to do so.

■ The evidence amply discloses that only one headlight was burning on the truck immediately prior to and at the time of the impact. However, the viaduct on which the truck was traveling was bathed in light from its numerous lighted ornamental lamps, and the truck could have been clearly seen even though it had possessed no lights at all. Under the circumstances, the absence of the light was not a proximate or contributing cause of the accident. Johnston v. Worley, 3 La.App. 675; Huddy's Encyclopedia of Automobile Law, vol. 3–4, p. 354. Further, the evidence does not preponderate in favor of the contention that the brakes were in improper condition. It is true that the truck traveled some distance after the accident, but this was due to the down-sloping grade of the viaduct and street, at and near the place of accident, and also to the fact that the impact caused serious damage to and the bending of the axle and steering gear of the truck, with the resultant loss of its control.

With reference to the second charge of contributory negligence, defendants' counsel, in a brief which is indicative of much study and research, earnestly urges that plaintiff Carbone had sufficient time, after noticing the beginning of Brosnan's turn,

to avoid the collision, and his failure to so avoid it was the proximate cause. He calls attention to a portion of the truck driver's testimony which is, in substance, that he (the driver) *imagined* that he was *about* a half block (150 feet) away from the Plymouth car when he saw it start to make the turn. However, by reason of other testimony found in the record which appears to be in contradiction to the portion defendants' counsel cites, and when considering the physical facts surrounding the collision and the circumstances hereinafter referred to, it is obvious that the distance so estimated by Carbone was based on a mere guess and was erroneous. Our appreciation of the testimony of plaintiff Charles Alengi on this question is that the accident occurred at a point about 20 feet north of the end of the viaduct, and that Brosnan turned in front of the truck as it was very close to such end. No testimony was furnished by defendant Brosnan or his companion on this matter of distance, for, as aforestated, the truck was not seen by them until at the moment of impact.

Viewing this situation in the light of the physical facts presented, we notice that Brosnan was making the turn at a speed of from five to ten miles per hour, and that he had traveled a distance of approximately 22 feet from the commencement of the turn to the point of collision. Using the above-mentioned lowest estimate of five miles per hour for the purpose of computing the time required in negotiating that distance, we find that he was traveling 7⅓ feet per second, or the 22 feet in three seconds. Carbone, according to his own testimony, was driving about fifteen miles per hour. There is no other evidence on his rate of speed. If this estimate be accepted as correct, the truck was traveling at the rate of 21.44 feet per second; and three seconds prior to the moment of impact, or at the time Brosnan began his turn, Carbone could have been only 64.32 feet from the point of collision. If the truck had been a half block, or 150 feet, away at the commencement of the turn, as defendants contend, approximately seven seconds would have elapsed before it could have reached the locus in quo, and by that time Brosnan would have completed his reverse turn.

It, therefore, follows that Carbone could not have avoided the accident, for he was too near to the Plymouth car, at the commencement of and during the turn. Particularly is this true when we consider that it was not incumbent on him to anticipate or expect that Brosnan, without any warning whatever, would suddenly turn across his path between street intersections.

In any event, contributory negligence under our law is an affirmative defense, and the one asserting it has the burden of proof. Rigby v. Ætna Casualty & Surety Co. (La.App.) 151 So. 119; Loewenberg v. Fidelity Union Casualty Co. (La. App.) 147 So. 81. The defendants herein have failed to discharge this burden.

Our conclusion is that the above-described negligence of defendant Brosnan was the proximate cause of the collision, and that he is responsible for whatever damages plaintiffs suffered.

Another contention is that the Hartford Accident & Indemnity Company was not the insurer of Brosnan's car. The group policy on which this suit is based, including the indorsements, was issued by the defendant insurance company for a period beginning February 1, 1934, and ending February 1, 1935, and was in effect at the time of the accident. It carries a maximum property damage limit for any one accident of $5,000, and a similar limit for bodily injury of $50,000. The name of the assured, as therein given, is as follows:

"Colgate-Palmolive-Peet Company and/or any allied, affiliated, or subsidiary company or corporation in which it now has or may hereafter have an interest *and/or for account of whom it may concern.*" (Italics ours.)

In connection with and under the policy, a certificate was issued in which defendant Brosnan's car was described by name, serial and motor numbers, style of body, and model. Brosnan is therein named as the certificate holder, and the assured is given as, "Colgate-Palmolive-Peet Company, and/or the Palmolive Company, and/or Kirkman & Son, Inc., *and/or certificate holder named herein.*" Defendant company, however, calls attention to a further provision of the certificate, viz., "This certificate of insurance only insures the salesman named herein while an employee of the Colgate-Palmolive-Peet Company, and/or the Palmolive Company, and/or Kirkman & Son, Inc.," and asserts that it is not liable because Brosnan was not an employee of any one of the three companies therein named, when the accident occurred.

Defendant Brosnan worked for the Colgate-Palmolive-Peet Company from April,

1929, until December 31, 1932. In November, 1933, he began his employment with Maison-Jurelle, Inc., and was immediately presented with a statement for the premium due for insurance covering his car until the following February 1st. This was paid by him. In February of 1934 he received another statement for the premium due for a year's insurance on his car represented by the above-mentioned certificate, which he also paid. This was the only certificate issued to him. The Colgate-Palmolive-Peet Company at one time distributed merchandise known as the "Seventeen Line." Later this line was taken over and handled by Maison-Jurelle, Inc. When the accident happened, Brosnan exhibited the above-described certificate to plaintiffs and their attorney, told them that he was insured thereunder with the defendant company, and made a report of the collision to such insurer. Brosnan left his employment with Maison-Jurelle, Inc., in July, 1934, which was after the accident involved herein, and thereafter received notice from that employer of its having obtained from defendant insurer a rebate for him of $11, being the unearned premium on the certificate from July to its expiration date.

Although we find no direct evidence in the record showing that Maison-Jurelle, Inc., was an allied, affiliated, or subsidiary company of the Colgate-Palmolive-Peet Company, it is apparent that such first-named company and its employees were fully protected by the policy under the provision, " * * * for account of whom it may concern." It is inconceivable that an employer would require or even permit its employees to pay premiums on a policy which would afford them and the employer no protection, and would concern itself with collecting and forwarding the payments to the insurer under that policy, and receive and distribute rebates to former employees. It appears that Maison-Jurelle, Inc., and its employees, were very much concerned in that policy. A combination of the aforementioned factors convinces us that the Hartford Accident & Indemnity Company was the insurer of Brosnan's car at the time of the accident, and we, therefore, hold that it is liable in solido with him for the damages which plaintiffs sustained.

Our attention and consideration has again been given to the question of quantum of these cases. On the previous hearing, we increased the award made by the trial court. We are of the opinion that our former holding on the question of quantum was correct, except as to the damage to the crop of spinach owned jointly by plaintiffs. The evidence shows that plaintiffs owned three acres of fully grown spinach at the time of the accident; that this crop was lost because their injuries prevented its harvesting and marketing; that the estimated crop was 500 dozen or bundles per acre, or a total of 1,500 bundles; and that the net profit to plaintiffs, if the crop had been marketed, would have been twenty cents per bundle. Previously, we allowed $300 for this item. However, one of the plaintiffs testified that 40 per cent. of their crop had already been pulled at the time of the accident, and it is not clear whether this was considered in arriving at the above estimate of 500 bundles per acre. The burden of proving damages is on the party or parties claiming them. Lucas v. Andress, 17 La.App. 329, 136 So. 207. And such damages must be proved with legal certainty. Mason v. Ruffin, 15 La.App. 375, 130 So. 843. Because of the uncertainty existing on this point, we must consider the estimate as applying to the full crop. Therefore, plaintiffs should be allowed $180 for this item, instead of the amount previously named. This allowance represents the net profit that would have accrued to plaintiffs after deducting 40 per cent. thereof for the spinach already harvested.

Accordingly, our former judgment is recast, and there is now judgment awarded Emile Carbone against D. J. Brosnan and the Hartford Accident & Indemnity Company, in solido, in the full sum of $467, less a credit of $177 awarded him by the trial court and paid by defendants; and in favor of Charles Alengi against D. J. Brosnan and the Hartford Accident & Indemnity Company, in solido, in the full sum of $432, less a credit of $142 awarded him by the trial court and paid by defendants; both judgments shall carry interest at the rate of 5 per cent per annum from judicial demand until paid. The costs of appeal shall be paid by the defendants.