AYRES, Judge.
This is an action by plaintiffs, husband and wife, for the recovery of damages and expenses resulting from personal injuries sustained by the latter and of property losses sustained and medical expenses incurred by the former in a motor vehicle collision of January 23, 1961. Involved were plaintiffs’ station wagon, driven by Mrs. Roberts, and a Chevrolet automobile of defendant’s assured, Charles B. Long, operated at the time by his wife, Mrs. Ruby Looney Long.
The accident occurred on State Highway 511, an extension of 70th Street of the City of Shreveport, seventy to eighty feet east of its intersection with the Flournoy-Lucas Road, and some distance east of a cutoff, or bypass road leading through a church yard, into which Mrs. Long intended to pass before continuing south on the intersecting road. Mrs. Roberts was traveling in an easterly direction, Mrs. Long, in the opposite direction. Immediately prior to their meeting, Mrs. Long attempted a left turn and proceeded across the center line of the highway into the left-hand lane, plaintiff’s right-hand lane, directly in front of plaintiff’s oncoming vehicle. A head-on collision was the result. The point of impact was in plaintiff’s proper lane of travel and in Mrs. Long’s left, or wrong, lane.
Plaintiffs allege that Mrs. Long was negligent in failing to maintain a proper lookout, in driving at an excessive rate of speed in a dense fog, and in leaving her proper lane of travel and crossing over into the left lane directly in front of plaintiff’s oncoming ve- *772 hide. These acts of negligence were denied by defendant, which alleges that Mrs. Roberts was negligent, or, in the alternative, contributorily negligent, in driving at an excessive and dangerous rate of speed in view of the heavy fog and limited visibility, and in failing to keep a proper lookout or to keep her automobile under control.
The trial court concluded that the proximate cause of the accident was Mrs. Long’s act in leaving her proper lane of travel and crossing onto the left-hand side of the road directly in front of the automobile driven by Mrs. Roberts. Accordingly, judgment was rendered in favor of plaintiff husband for $750.30 and, in favor of plaintiff wife, for $2,500.00. From this judgment, defendant appealed. Mrs. Roberts, through an answer to the appeal, prays that the award in her favor be increased to $4,750.00.
The accident occurred about 8:00 a.m. Mrs. Roberts had driven her husband to Greenwood, where he was engaged as a public school teacher, and was returning to their residence. Her speed had been about 40 m.p.h. On reaching the intersection with the Flournoy-Lucas Road, she reduced her speed and completed the crossing at a speed of 15-20 m.p.h., after which she accelerated her pace to about 25 m.p.h. A heavy fog covered the highway for about one-fourth mile in either direction from the scene of the accident. Visibility was reduced to 15-20 feet. Mrs. Long, who was driving westerly with the intention of turning left at a cutoff road leading through a church yard and then proceeding in a southerly direction on the intersecting road, turned before she reached the cutoff road. Immediately as she crossed over the center line into the left lane, a head-on collision occurred with plaintiff’s vehicle. Mrs. Long testified she had reduced her speed, prior to the accident, to 12 m.p.h., and that, although her visibility was reduced by the fog to 15 feet, she never saw plaintiff’s vehicle before the collision. Mrs. Roberts saw the oncoming car as it crossed the center line into her lane of travel at a distance of about 15 feet away; whereupon she immediately applied her brakes to avoid a collision, but was unsuccessful in doing so.
Appellant’s argument for a reversal of the judgment is predicated upon the contention that driving at an excessive speed in a blinding fog constitutes negligence and fixes liability upon the motorist guilty of such action. Cited in support of this proposition are these cases: Giorlando v. Maitrejean, La.App. Orleans, 1945, 22 So.2d 564; Employers’ Fire Ins. Co. v. Rodgers, La.App. 2d Cir., 1950, 47 So.2d 404; Dixie Highway Express v. C. C. Galbraith & Son, La.App. Orleans, 1952, 61 So.2d 218; Hecht v. Toye Bros. Yellow Cab Co., La.App. Orleans, 1953, 62 So.2d 520.
These cases are readily distinguishable from the instant action as they concern motorists who, unable to see, struck objects on their side of the road, which objects had a right to be where they were, such as, for instance, a forward-moving vehicle. This court aptly observed, in Taylor v. Fidelity & Casualty Co. of New York, La.App. 2d Cir., 1951, 55 So.2d 307, 310:
“ * * * It has many times been stated that a motorist has the right to assume that his proper lane of traffic will be clear and unobstructed by traffic approaching from the opposite direction even in those instances where his vision is impaired by natural obstacles.”
See, also : Cox v. Louisiana Department of Highways, La.App. 2d Cir., 1946, 25 So.2d 824, 827 (writs denied); Dowden v. State, La.App. 2d Cir., 1955, 81 So.2d 48, 55.
We are, nevertheless, in general accord with the pronouncements of the authorities cited and relied upon by appellant and others which might be cited with reference to the imposed requirements of unusual care while driving a motor vehicle in fog, smoke, or other serious obstructions to visibility. Notwithstanding, we are, however, in agreement with the conclusion of the trial court that Mrs. Roberts’ failure in *773 this respect, if any, did not constitute either a proximate or a contributing cause of this particular accident. The sole cause of the accident, in our opinion, was Mrs. Long’s gross negligence in driving across the center line of the highway and blocking the movement of traffic. Mrs. Long’s maneuvers were in violation of the prohibitory provisions of the Highway Regulatory Act. For instance, it is provided in LSA-R.S. 32:236, subd. A:
"The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give clearly audible signal by sounding the horn; and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement.” (Emphasis supplied.)
The jurisprudence in accord with the aforesaid statutory provision is so replete with pronouncements to that effect that citation of authority is deemed no longer necessary. The holdings are also legion to the effect that a left turn is one of the most dangerous maneuvers a motorist may undertake, and that such movement should never be undertaken until it is ascertained that it may be made in safety and without unduly delaying or affecting the normal movement of traffic. Thus, a driver of a motor vehicle attempting to turn from a mam highway to his left onto an intersecting roadway bears the burden, in the event of an accident, of showing there was no fault on his part, and, when he attempted to do so, there was ample distance and time within which to complete the maneuver. Michelli v. Rheem Mfg. Co., La.App. Orleans, 1948, 34 So.2d 264; Codifer v. Occhipinti, La.App. Orleans, 1952, 57 So.2d 697, 699.
As was observed in the latter case:
“ * * * When such a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence.”
The rule was emphasized in the case of Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295, 296-297, wherein it was stated:
“ * * * The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver ‘shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.’ (Emphasis ours.) * *
Mrs. Long did not satisfactorily account for her presence on the left side of the highway. Her conduct was violative of all the aforesaid fundamental rules of safety which all motorists are enjoined to observe. Her negligence was a proximate cause of the accident.
On the other hand, we find no merit in the contention that Mrs. Roberts’ speed was a contributing factor in the occurrence of the accident. She, as stated, was proceeding at a moderate rate of speed in her lane of travel when Mrs. Long’s oncoming car suddenly turned to its left across the center line of the highway and entered plaintiff’s traffic lane. Mrs. Roberts’ speed *774 had no causal relationship to the accident. Regardless of her speed, the accident, under the circumstances, would have occurred by reason of Mrs. Long’s turning to the left and entering plaintiff’s lane.
Should it be conceded that Mrs. Roberts was negligent in continuing to drive in a fog, such fact would not avail defendant any comfort, for negligence alone, in the operation of a motor vehicle, does not give rise to a cause of action; nor does such negligence alone constitute a basis for a plea of contributory negligence unless it is established that such negligence is the proximate or contributing cause of the accident. As stated in Smith v. Aetna Casualty & Surety Company, La.App. 2d Cir., 1961, 128 So.2d 235, 237:
“Excessive speed, although a violation of law, is not necessarily regarded under our jurisprudence as a proximate or contributing cause of every accident. Plaintiff is not to be denied recovery purely upon the basis of such showing unless it is established that such speed has a causal connection with the accident.”
See, also: Cone v. Smith, La.App.2d Cir., 1954, 76 So.2d 46 (writs denied); Haddox v. Baton Rouge Bus Company, La.App. 1st Cir., 1961, 135 So.2d 142, 144.
In the Cone case, Smith admittedly was traveling at a speed of 85-90 m. p. h. Nevertheless, the act of one Robinson, the driver of an oncoming vehicle, in turning directly in front of Smith’s car, was found to constitute the sole cause of the collision. Smith’s speed was not a contributing factor. An identical situation is presented here as to Mrs. Roberts’ speed.
As heretofore pointed out, there is no question of Mrs. Long’s noncompliance with the aforesaid fundamental rules of safety. The conclusion is, therefore, inescapable that the accident was caused solely through her negligence in taking to the wrong side of the road and striking' an oncoming vehicle proceeding properly on its side of the highway.
Finally, for consideration, is the question of quantum. Special damages awarded plaintiff husband for medical treatment of the wife’s injuries and for property damage to the family automobile were amply proven. The correctness of the award for the personal injuries sustained by Mrs. Roberts is, however, subjected to serious question by both plaintiff and defendant. Defendant contends that the award is excessive, while Mrs. Roberts submits that it is inadequate.
The record, however, is convincing that Mrs. Roberts sustained severe and painful injuries. She was thrown forward against the steering wheel with such force as to break it in two and, also, with such force as to break the horn rim completely in two, a segment of which pierced the fourth finger of her right hand. Her left hand was also cut. She sustained a terrific blow to her chest and abdomen.
Following the accident, Mrs. Roberts was carried by car to her residence and placed in bed. Because of excruciating pain, she was, on the morning of the second day following the accident, carried by ambulance to a local hospital and placed under the care of Dr. Frank E. Kappen. Examinations revealed that Mrs. Roberts sustained bruises throughout her body, with a large subcutaneous hematoma on the abdomen measuring approximately four by eight inches. Also sustained were abrasions on the right hand.
Mrs. Roberts remained in the hospital for a period of 13 days. Tests by x-ray disclosed no bone fractures. From tha persistence of severe pain in the chest and abdomen, Dr. Kappen concluded the patient had sustained a diaphragmatic hernia, which, however, responded to treatment in approximately six weeks. After discharge from the hospital, Mrs. Roberts was confined to her bed for an additional period of approximately two weeks at her brother’s home.
*775 Dr. Willis J. Taylor, an orthopedist, was called in consultation. His examination, likewise, disclosed no fractures, but he found swelling and soreness in the right hand and was of the opinion, as a result of the accident, that Mrs. Roberts had sustained traumatic arthritis of the proximal interphalangeal joint of the right ring finger, and contusions and strain of the inferior left costochondral junctions and ribs.
Mrs. Roberts, by education, training, and experience, is a stenographer, and is also a pianist. As a pianist, she had been engaged as a musician at many functions; however, at the time of the accident, she was unemployed. On May 15, 1961, she resumed employment as a legal secretary. The injuries to her hand were particularly significant in view of her occupation.
As frequently pointed out, there is no definite rule for the measurement of damages in personal-injury cases; ultimately, the amount to be awarded must be determined by the facts peculiar to each case. Of necessity, many factors enter into the evaluation of a court award for personal injuries. The authorities cited to the court by plaintiffs and defendant in support of their respective positions have been reviewed and given consideration. However, we find none of these particularly helpful or controlling. But, after a thorough consideration of the nature, extent, and duration of plaintiff’s injuries, the pain and suffering undergone, and the effect, although slight, of the traumatic arthritis in her hand, we have concluded that an award of $4,000.00 will do substantial justice between the parties.
Hence, for the reasons assigned, the judgment appealed is amended by increasing the award in favor of Mrs. Elizabeth Alford Roberts to the sum of $4,000.00, and, as so amended, it is affirmed. The defendant-appellant is assessed with all costs, including the cost of this appeal.
Amended and affirmed.