James A. MORGAN

v.

SOUTHERN FARM BUREAU CASUAL-
TY INSURANCE COMPANY;
Confederate Memorial Medical Center,
Intervenor.

Civ. A. No. 8671.

United States District Court
W. D. Louisiana,
Shreveport Division.

Nov. 27, 1963.

---

Neil Dixon, Dixon & Malsch, Shreveport, La., for plaintiff.

Frank M. Cook, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendant.

Nesib Nader, Shreveport, La., for intervenor.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

This action is brought against a nonresident insurer pursuant to the provisions of the Louisiana Direct Action Statute, LSA–R.S. 22:655.

Plaintiff, a resident of Homer, Louisiana, sues Southern Farm Bureau Casualty Insurance Company, a Mississippi corporation, claiming that defendant's insured, Fred K. Crump, negligently injured him in a truck-motorcycle collision.

At about 6:05 p. m.,[1] on February 6, 1961, plaintiff was driving north on State Highway 79, in the City of Haynesville on a motorcycle with two other young men. The motorcycle lights were not burning. Sunset was at 5:53 p. m., but darkness had not fallen. It was at that stage of twilight when some people drive with their lights on and some do not.[2] Street lights in Haynesville had been turned on and with them, even on a dark night, a driver could see well enough to maneuver his vehicle upon the streets with reasonable safety. Earlier in the afternoon it had been misting. The streets were damp, but were not soaked with water nor were there any puddles.

Crump and his brother entered their pick-up truck parked parallel to Highway 79, which at that point runs north and south. There was a welding shop to the west and steel obstructions on the ground to the north, in front of the truck. He turned on the lights, looked out the wet, "not too clear" rear window, and proceeded to back across the highway toward

1. Time of the accident is established by the following synopsis of the evidence:

Complainant's witnesses—Fred L. Fanning heard the collision a few minutes before 6:00 p. m. (Tr. 8); Maurice N. Birdwell got on the motorcycle about 6:00 p. m. and the accident was shortly thereafter (Tr. 18); Dr. Brumfield examined Burrow after the accident at about 6:15 p. m. (Tr. 69); M. J. Birdwell received a phone call about the accident at 6:10 p. m. (Tr. 79); Wallace Goodwin heard the ambulance siren about 6:00 p. m. (Tr. 90–91); James A. Morgan was downtown about ten or twelve minutes before 6:00 p. m. and drove off four or five minutes later (Tr. 93–94).

Defendant's witnesses—William Cockrell saw the motorcycle with three boys on it drive by at between 6:05 and 6:15 p. m., and received a phone call about the accident just minutes later (Tr. 162–163); Carroll Maddox saw the motorcycle go by in the neighborhood of 6:00 p. m., but undoubtedly after 6:00 p. m. (Tr. 171); Cecil Kendrick received the call for an ambulance at 6:15 p. m., give or take 5 minutes (Tr. 177); Fred Crump estimated he quit work at the welding shop at 6:30 p. m. (Tr. 203).

From this evidence, giving the most weight to the disinterested witnesses, it is clear that the accident must have occurred between 6:00 and 6:10 p. m., and the probability is that it was about 6:05 p. m.

2. At the time of the accident, the applicable statute did not require vehicles operated upon the highway to be lighted until one half hour after sunset unless there was not sufficient light to render clearly visible any person on the highway two hundred feet ahead. LSA–R.S. 32:-290 (1950). However, in 1962 the Legislature passed an act which requires vehicles to be lighted from sunset to sunrise. LSA–R.S. 32:301 (Supp.1962).

an open area so that the truck could then re-enter the highway and be headed in a southerly direction.

Morgan was about 50 or 60 feet from the truck when he noticed it moving and about 40 feet away when it became apparent that the truck would be backed across the highway into the north-bound lane. He yelled, applied his brakes, and headed for the right, or east, shoulder of the road. The motorcycle began to slide out of control, so he let up on the brakes. Impact with the truck's rear bumper and tail gate occurred at the easterly edge of the highway or upon the shoulder of the road at the edge of the pavement. Morgan sustained severe injuries for which he here seeks an award of damages.

■■■ There is no question but that Crump was guilty of the grossest negligence proximately causing the accident. An automobile operator who drives from a private driveway onto a highway must be extremely careful, and, if the vehicle is being backed onto the highway, the driver must use an even higher degree of care.[3] He is not absolved of negligence if he fails to see what he could and should have seen by the exercise of reasonable care and diligence.[4]

■■■ Defendant seeks to relieve itself of liability by pleading that plaintiff was guilty of contributory negligence which was a proximate cause of the accident and should bar recovery. One of its contentions is that Morgan was negligent in driving a motorcycle at twilight on a cloudy day without lights. If lighted, it argues, then Crump or his brother might have seen the motorcycle approaching and stopped the truck in time to have avoided the accident.

Louisiana courts repeatedly have announced that failure to display proper lights upon a vehicle driven by a plaintiff will not bar recovery if the streets are well lighted or for some other reason the absence of lights on the plaintiff's vehicle was not the proximate cause of the accident.[5]

The preponderance of the evidence convinces us that the absence of a burning light on the motorcycle was not a proximate cause of the accident. Apparently lights were needed shortly after the accident in areas where it was misting or there was light rain. However, when the accident occurred, it was not misting or raining. Even one of defendant's witnesses, a night policeman, admitted he believed that Morgan, a large man, who was wearing a light beige coat, could have been seen a hundred yards away. Other evidence indicates that there was still sufficient daylight at the time that, even if the lights had been turned on, the beam could not have been seen. Apparently this accident happened at that time of day when a beam of light does not illuminate the ground, but approaching vehicles can see that the lights

3. Garcia v. Anchor Casualty Co., 148 So.2d 371 (La.App.1962); Clingman v. Millerville Mud Sales, Inc., 146 So.2d 240 (La.App.1962); Holland v. United States Fidelity & Guaranty Co., 131 So.2d 574 (La.App.1961); Josey v. Granite State Fire Insurance Co., 122 So.2d 303 (La.App.1960); Bush v. Williams, 74 So.2d 335 (La.App.1954); Strehle v. Giaise, 46 So.2d 685 (La.App.1950).

4. Greyhound Corp. v. Dewey, 240 F.2d 899 (5th Cir. 1957); Smith v. Borchers, 243 La. 746, 146 So.2d 793 (1962); Geoghegan v. Greyhound Corp., 226 La. 405, 76 So.2d 412 (1954); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938). Under certain conditions a motorist's failure to see may be excusable, such as where he is suddenly blinded by the lights of an on-

coming vehicle. Great American Indemnity Co. v. Cormier, 187 F.2d 107 (5th Cir. 1951); Cf. State Farm Mutual Automobile Insurance Co. v. Canzoneri, 297 F.2d 369 (5th Cir. 1961). However, all the surrounding facts and circumstances must be considered in determining whether the failure to see was excusable. Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377 (1940).

5. Fuxan v. Messonier, 49 So.2d 758 (La.App.1951); Grasser v. Cunningham, 200 So. 658 (La.App.1941); Alengi v. Hartford Accident & Indemnity Co., 167 So. 130 (La.App.1936); Schmidt & Zeigler, Ltd. v. Carroll, 161 So. 785 (La.App. 1935); Austin v. Sumrall, 141 So. 772 (La.App.1932); Johnston v. Worley, 3 La.App. 675 (1926).

are burning. The only precaution that Crump took before executing his very dangerous maneuver of backing across the highway was to look out a rain-streaked rear window.

Under the lighting conditions then existing, by taking proper precautions before and during his backing movement across the highway, Crump could and should have seen the approaching motorcycle. Considering the manner in which he maneuvered his vehicle, there is no reason to believe that, even had the motorcycle lights been burning, the accident would have been avoided. Especially is this true since at twilight its lights would not have been seen easily unless one looked directly at them. If Crump had looked toward the motorcycle, as he legally should have done, in a manner which would have allowed him to see its lights, then he would have seen plaintiff even without lights.

Also urged as contributory negligence was that plaintiff failed to maintain control of the motorcycle by riding with three persons on it and by proceeding at a speed in excess of the City's speed limit, both of which allegedly contributed to his being unable to apply the brakes full force or maneuver clear of the truck in time to avoid the accident. Although plaintiff may have been negligent in these respects, his actions were not a proximate cause of the accident. Negligence on the part of a plaintiff is not sufficient to sustain a plea of contributory negligence. There also must be a showing that such negligence was a proximate cause of the accident.[6]

When Morgan, as a reasonably prudent man, first realized that the truck would cross into his lane of the highway, the truck was only thirty-five or forty feet away. Although the evidence is somewhat conflicting, the motorcycle probably was traveling about 30 m. p. h. De-fendant's motorcycle expert testified that on a dry surface, using both brakes, at 30 m. p. h., with just one rider, the braking distance would be fifty (50) feet. This does not include additional distance for reaction time, generally recognized as ¾ of a second, during which the motorcycle, at 30 m. p. h., would have travelled 44 feet. Although a city ordinance set the speed limit at 25 m. p. h., the speed limit posted on signs was 30 m. p. h. The ordinance also provided that authorities, by signs, could direct maximum speeds lower or higher than 25 m. p. h. We need not decide which applies since the evidence establishes conclusively that the motorcycle could not have been stopped in time even if there had been only one rider and the speed had been only 25 m. p. h.[7] Morgan attempted to slow by applying the brake, he yelled, and he pulled over to the far right-hand side of the road. Under the circumstances, his conduct was not a proximate cause of the accident, and, therefore, he is entitled to recover damages from defendant.

The evidence clearly establishes that plaintiff has been damaged far in excess of the $25,000 policy limit. Morgan was thirty-two years old at the time of the accident. The extent of his injuries, the broken and exposed bone, the blood, and the excruciating pain which he consciously endured for hours after the accident, convince us that more painful injuries would be difficult to imagine. He remained in almost constant, severe pain for about two and one-half years. So far, five operations have been required. Because of infection in bone and tissue, his left leg was amputated surgically about nine inches below the knee, but in order satisfactorily to use a prosthetic lower leg and foot it will be necessary to perform another amputation at a higher level of the leg. Headaches,

6. White v. State Farm Mutual Automobile Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338 (1953); Roberts v. London Guarantee & Accident Co., 140 So.2d 770 (La.App.1962); and cases cited in n. 5, supra.

7. Violation of a traffic regulation is not negligence, or contributory negligence, unless it is a proximate cause of the accident. Hollabaugh-Seale Funeral Home v. Standard Accident Insurance Co., 215 La. 545, 41 So.2d 212 (1949).

reaction to anesthesia, and other complications have plagued him.

Morgan's occupation was that of a painter and oil field worker, both of which required considerable climbing and use of his legs. At the time of the accident he was earning about $4,500 per year. Already he has lost two and one-half years' wages. In addition to past lost wages, loss of prospective earnings, pain and suffering, and amputation of his leg, he will be required to spend $350 about every three years for a new prosthesis, plus annual maintenance of approximately $150.00.

Confederate Memorial Medical Center of Shreveport has intervened pursuant to the provisions of LSA–R.S. 46:8–46:15, claiming $2,792 for hospital services rendered to Morgan free of charge. LSA–R.S. 46:11.1 provides, "The * * * Confederate Memorial Medical Center in Shreveport * * * may intervene at any time prior to judgment in any personal injury suit * * * in which [it] has an interest, for the purpose of recovering the costs of drugs, X-ray, laboratory fees, surgical, medical and other expenses of hospitalization and services rendered." LSA–R.S. 46:8 stipulates in pertinent part that "[w]here a patient in any state supported hospital has been injured by the negligence of another person * * * and has a right of action for the recovery of compensatory damages against that person, the board of administrators of the hospitals shall be subrogated to the right of action to the extent of reasonable charges for services rendered to the patient, in accordance with like charges in other hospitals of the first class, including physicians' and surgeons' fees."

██ Plaintiff asserts that he is entitled to damages in an amount at least double the policy limit of $25,000, and that since, by the limitations of defendant's policy, he may collect only one-half of his damages, intervenor likewise should collect only half of its claim. Intervenor states that it is not seeking any preference over plaintiff's claim, but that its right of subrogation to plaintiff's claim entitles it to full payment. No authorities are cited for either position.[8]

What intervenor asserts is in effect a preference to the proceeds collected as compensatory damages. As a subrogee, intervenor has no greater rights than plaintiff. Therefore, its claim is limited by the policy limit which restricts defendant's liability to one person to $25,-000. Since $25,000 is not adequate to pay all of the damages, we must decide how the $25,000 is to be distributed between intervenor and plaintiff. Intervenor is not subrogated to all of the rights of complainant, but only to his rights to collect for hospital charges. Under Louisiana law, privileges are strictly construed and exist only by express provision of law.[9] No preference is given intervenor by statute; therefore, we find as an equitable proposition that it must share *pro rata* in distribution of the $25,000.

We hold that defendant is liable to plaintiff for the policy limit of $25,000; and that for purposes of proration plaintiff has sustained $50,000 damages,[10] including the charge for hospital services rendered by intervenor. Plaintiff is entitled to half of his damages and from this intervenor is entitled to half of its claim. Defendant should pay plaintiff $23,604.00 and intervenor $1,396.00, plus legal interest on these amounts from date of judicial demand, plus all taxable costs.

A proper decree should be presented.

8. Plaintiff notes, however, that under the Workman's Compensation Statute the employer who pays compensation is subrogated to the rights of his injured employee against a third person and is specifically given a preference for the amount of such payments. LSA–R.S. 23:-1103 (Supp.1962). No such preference is provided in the statute relied upon by intervenor.

9. See Articles 3183–3185 of the Louisiana Civil Code, and the numerous cases cited under those articles in LSA.

10. Cf. 16 A.L.R.2d 3, 250 (1951).